108 P.3d 261

**STATE of Arizona, Appellee,**

v.

**George Melendez ESTRADA, Appellant.**

**No. 1 CA–CR 03–0914.**

Court of Appeals of Arizona, Division 1, Department E.

March 4, 2005.

As Amended March 10, 2005.

---

* The Honorable Kirby Kongable, Judge *Pro Tempore* of the Court of Appeals, Division One, has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 31 and A.R.S. §§ 12–145 through 12–147.

112

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Diane M. Acosta, Assistant Attorney General, Phoenix, for Appellee.

James J. Haas, Maricopa County Public Defender, By Susan L. Corey, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

HALL, J.

¶ 1 The issue presented on appeal is whether the Sixth Amendment's jury-trial guarantee [1] as interpreted by the United States Supreme Court in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), entitles a defendant whose prior convictions constitute an aggravating circumstance to jury findings on the existence of any additional aggravating factors. We conclude that, under Arizona's noncapital sentencing scheme, a defendant is not constitutionally entitled to jury findings in such a case.[2]

## FACTUAL BACKGROUND

¶ 2 On April 22, 2003, the victim was home alone when she heard a knock at her front door. She did not recognize the man at the door and did not open it. The man, later identified as Estrada, sat in a chair on the front porch and began reading a newspaper. Periodically, he would get up and knock on the door, look into the window, and shake the door knob. The victim surreptitiously watched Estrada from inside the house but did not reveal her presence.

¶ 3 After repeating this pattern for approximately half an hour, Estrada went to the side of the house. Becoming increasingly alarmed, the victim called the police. Estrada tried unsuccessfully to open the door of her truck and then climbed atop some wooden pallets near her fence and whistled. Bolt cutters were handed over the fence. Estrada used the bolt cutters to cut the lock on the back gate and another lock on the gate leading to the back alley where a white truck was parked. Estrada's accomplice entered the backyard through the alley gate. Estrada then used the bolt cutters to cut the lock securing the victim's lawn mower to a wooden post and took the lawn mower.

¶ 4 Estrada came to the victim's back door and unsuccessfully attempted to open the sliding door lock. The victim became in-

1. "In all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury ...." U.S. Const. amend. VI.

2. Estrada raises two issues on appeal. We address the additional issue raised by Estrada in a separate Memorandum Decision. *See* Ariz. R.Crim. P. 31.26.

creasingly frightened and worried that the police would not respond in time, and hung up the telephone and called her neighbor. The neighbor came over immediately and confronted the two men who fled to the white truck in the alley.

¶ 5 By this time, two Phoenix Police Officers had responded to the scene and had just come upon the entrance to the alley when the truck appeared. The officers ordered the men out of the truck and put them under arrest. At trial, both officers identified Estrada as one of the occupants of the truck.

¶ 6 The officers found a padlock with its clasp cut on the front seat of the truck and the lawn mower in the bed of the truck. One of the officer's found bolt cutters in the victim's backyard, a broken chain that had secured the front gate, a broken lock on the ground near the back gate, and a cut cable that had been used to tether the lawn mower to the post.

¶ 7 Later that morning, the victim identified Estrada and his accomplice as the men she had seen at her house. She was able to make the identification based upon the clothing both men were wearing.

¶ 8 Both men were charged with one count of burglary in the third degree, a class 4 felony, and one count of possession of burglary tools, a class 6 felony, and tried separately. The jury convicted Estrada on both counts and the court sentenced him to aggravated prison terms of 11 years and 4 years, respectively, to be served concurrently. Estrada timely appealed.

## DISCUSSION

### I.

¶ 9 Estrada claims that the aggravated sentences imposed by the trial court violate *Blakely*. Because he had multiple historical prior felony convictions and committed the present offenses while on probation, *see* Ariz. Rev.Stat. (A.R.S.) §§ 13–604(C) and –

604.02(B) (2001), Estrada faced the following sentencing ranges: (1) a minimum flat-time sentence of 10 up to a maximum of 12 years for burglary in the third degree; and (2) a minimum flat-time sentence of 3.75 up to a maximum of 4.5 years for possession of burglary tools.[3] Before imposing Estrada's sentence, the trial court found four aggravating circumstances: (1) emotional trauma to the victim as a result of the incident, (2) the presence of an accomplice, (3) that the offenses were committed for pecuniary gain, and (4) Estrada's extensive history of felony convictions,[4] and one mitigating circumstance: Estrada's history of substance abuse. The court then found that the aggravating circumstances outweighed the mitigating circumstance and imposed slightly aggravated sentences of 11 and 4 years, respectively.

¶ 10 Estrada contends that the judicial determination of aggravating circumstances denied him the jury-trial guarantee of the Sixth Amendment that "every defendant [has] the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2543. In *Blakely*, the Supreme Court held that a Washington State statute that authorized a trial judge to impose a sentence above the "standard range" based on facts found by the court at sentencing by a preponderance of evidence violated Blakely's federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence: "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Id.* at ——, 124 S.Ct. at 2537 (citations omitted).

¶ 11 However, one of the aggravating factors found by the trial court—Estrada's history of prior felony convictions—is exempt from the *Blakely* rule:

This case requires us to apply the rule we expressed in *Apprendi v. New Jersey*, 530

---

3. These maximum terms could have been further increased pursuant to A.R.S. § 13–702.01 (2001) had the trial court found at least two substantial aggravating factors.

4. Estrada's previous convictions include attempted burglary in the second degree (two times), trafficking in stolen property (two times), attempted theft, escape in the second degree, and solicitation to possess narcotic drugs.

U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): *"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Id.* at ——, 124 S.Ct. at 2536 (emphasis added). *See United States v. Quintana–Quintana,* 383 F.3d 1052, 1053 (9th Cir.2004) (citing widespread agreement among federal circuit courts that *Blakely* preserves the exception for the fact of a prior conviction); *State v. Cons,* 208 Ariz. 409, 413, ¶ 10 n. 3, 94 P.3d 609, 613 n. 3 (App.2004). Furthermore, because several of Estrada's convictions occurred within ten years preceding the date of the current offenses, the court was *required* to consider them as aggravating factors. *See* A.R.S. § 13–702(C)(11) (2001) (requiring that the court consider as an aggravating circumstance that a "defendant was previously convicted of a felony within the ten years immediately preceding the date of the offense"). Hence, no additional facts were *necessary* to support the aggravated sentences imposed in this case. *See State v. Brown (McMullen),* 209 Ariz. 200, 202, ¶ 11, 99 P.3d 15, 17 (2004) ("Section 13–702(A) allows an increase of [the] presumptive sentence to [the] maximum ... upon a finding of one or more of the aggravating circumstances set forth in § 13–702(C)."). Indeed, a defendant *must* be sentenced to an aggravated term if the trial court finds one or more aggravating circumstances and no mitigating circumstance(s). A.R.S. § 13–702(D)(5).

¶ 12 Thus, it is clear that had the trial court restricted its finding of aggravating circumstances to Estrada's prior convictions, Estrada could only ask us to review his sentences for an abuse of discretion by the trial court. *See State v. Long,* 207 Ariz. 140, 147, ¶ 37, 83 P.3d 618, 625 (App.2004) ("If sufficient and appropriate aggravating circumstances exist to justify imposition of an aggravated sentence, we will find no abuse of discretion in the trial court's decision to im-

pose such a sentence."). The question therefore presented is whether *Blakely* nonetheless required that the additional aggravating factors be submitted to a jury and proved beyond a reasonable doubt because they were facts that "increase[d] the penalty for a crime beyond the prescribed statutory maximum." Estrada did not raise this claim in the trial court; therefore, we review for fundamental error. *See State v. Henderson,* 209 Ariz. 300, 302, ¶ 1, 100 P.3d 911, 913 (App. 2004) (reviewing claimed *Blakely* violation for fundamental error); *State v. Martinez,* 209 Ariz. 280, 282, ¶ 1, 100 P.3d 30, 32 (App.2004) (same) (petition for review granted on February 8, 2005).[5]

¶ 13 *Blakely* describes the term "prescribed statutory maximum" as:

> the maximum sentence a judge may impose *solely on the facts reflected in the jury verdict or admitted by the defendant* .... In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

542 U.S. at ——, 124 S.Ct. at 2537. Under Arizona's statutory scheme, Estrada's criminal history constituted an aggravating circumstance that—without the need for *any* additional jury findings—exposed him to being sentenced to 12 and 4.5 years, respectively, based solely on the facts reflected in the jury verdicts. Because the sentences imposed by the trial court did not exceed these maximums, the three additional aggravating circumstances found by the trial court were not *facts legally essential to the punishment;* thus, Estrada had no legal *right* to have a jury determine their existence. *See id.* at ——, 124 S.Ct. at 2543 ("[E]very defendant has the *right* to insist that the prosecutor prove to the jury all facts legally essential to the punishment.").

¶ 14 Instead, given the existence of Estrada's *Blakely*-exempt prior convictions, § 13–702 authorized the trial court to find and

---

5. We assume for purposes of our analysis that Arizona's procedures for imposing an aggravated sentence implicate *Blakely,* at least in part. *See State v. Resendis–Felix,* 209 Ariz. 292, 294, ¶ 4 n. 1, 100 P.3d 457, 459 n. 1 (App.2004) ("It [] appears certain that *Blakely* applies [] to Arizona's general noncapital sentencing statutes.") (citing *Brown (McMullen),* 209 Ariz. at 203, ¶ 12, 99 P.3d at 18). The State does not contend otherwise.

weigh these additional aggravating factors (against the mitigating circumstance) in making its discretionary decision whether to impose an aggravated sentence, and if so, to choose an appropriate sentence within the applicable sentencing range. Hence, as is the case with an indeterminate sentencing scheme, the trial court was statutorily authorized to determine facts that helped it choose a sentence within the range of options available without implicating the jury-trial guarantee because a judge "may implicitly rule on those facts he deems important to the exercise of his sentencing discretion" that do not infringe on "the jury's traditional function of finding the facts essential to lawful imposition of the penalty." *Id.* at ——, 124 S.Ct. at 2540; *see also id.* (judicial factfinding permissible when such facts "do not pertain to whether the defendant has a legal *right* to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned"). Therefore, we conclude that the trial court's imposition of aggravated sentences did not violate *Blakely*.[6]

¶ 15 Our conclusion is supported by *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), in which the United States Supreme Court considered the related question whether a federal statute that treated the "brandishing" of a firearm during the commission of a crime [7] as a sentencing factor requiring an increase in the minimum sentence was actually a separate crime that must be submitted to a jury and proved beyond a reasonable doubt. Reject-

ing Harris' argument that brandishing a firearm was a separate crime, the Court instead analogized the firearms statute to criminal statutes "providing judges discretion within a permissible range," *id.* at 558, 122 S.Ct. 2406 (quoting *Apprendi,* 530 U.S. at 481, 120 S.Ct. 2348), which it noted have long been recognized as constitutional. *Id.*[8] In doing so, the Court made clear that "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." *Id.* at 558, 122 S.Ct. 2406.

¶ 16 In language later echoed in *Blakely,* the Court further explained that the "elements" to which the constitutional protections attach consist of "facts legally essential to the punishment to be inflicted." *Id.* at 561, 122 S.Ct. 2406 (citations omitted). Because the minimum could have been imposed "with or without the factual finding; the finding [was] not 'essential' to the defendant's punishment." *Id.* Likewise, Estrada's constitutional rights were not violated because the trial court had discretion to impose aggravated sentences "with or without" the additional factual findings. *See also Ring v. Arizona,* 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("Capital defendants, no less than noncapital defendants ... are entitled to a jury determination of any fact on which the legislature *conditions* an increase in their maximum punishment.") (emphasis added).

¶ 17 In *Martinez,* another panel of this court recently reached a similar conclusion

---

**6.** It is worth noting that *Blakely* does not stand for the proposition that all sentences imposed pursuant to a determinate-type sentencing scheme are, for that reason, unconstitutional. *See id.* at ——, 124 S.Ct. at 2540 ("This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment.").

**7.** *See* 18 U.S.C. § 924(c)(1)(A)(ii) (1998).

**8.** *See, e.g., Apprendi,* 530 U.S. at 481, 120 S.Ct. 2348 ("We should be clear that nothing in [our common-law] history suggests that it is impermissible for judges to exercise discretion—taking into account various factors relating both to offense and offender—in imposing a sentence *within the range* prescribed by statute. We have often noted that judges in this country have long

exercised discretion of this nature in imposing sentences *within statutory limits* in the individual case."); *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."). *Compare Jones v. United States,* 526 U.S. 227, 251 n. 11, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (construing the different maximum sentences dependent upon the extent of harm to the victim in federal carjacking statute as an element of the crime).

when it held that the trial court was not prohibited by *Blakely* from relying on additional aggravating factors in determining the appropriate sentence when at least one aggravating factor (the death of the victim) was implicit in the jury's verdicts:

> Because the jury found at least one aggravating factor, defendant was eligible to receive an aggravated sentence, and the trial court's weighing of additional aggravating and mitigating circumstances to determine the appropriate sentence within the aggravated range was permissible. Put another way, the jury having found the existence of one aggravating factor, its verdict expanded the sentencing range and the scope of the trial court's sentencing discretion. When one aggravating factor is authorized by the jury, *Blakely* is satisfied.

209 Ariz. at 284, ¶ 16, 100 P.3d at 34.

¶ 18 As did the panel in *Martinez*, we reject the argument that *State v. Ring*, 204 Ariz. 534, 561–62, ¶ 88, 65 P.3d 915, 942–43 (2003) (*Ring III* ), requires that *all* aggravating factors in noncapital cases be found by a jury. It is true that in *Ring III*, our supreme court declined to adopt a "narrow" reading of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (*Ring II* ) that would have permitted a judge in capital cases to find the existence of additional aggravating factors so long as there was at least one aggravating factor either implicitly found by the jury or not subject to the *Ring II* analysis: "[W]e conclude that *Ring II* requires a jury to consider all aggravating factors urged by the state and not either exempt from *Ring II*, implicit in the jury's verdict, or otherwise established beyond a reasonable doubt." 204 Ariz. at 562, ¶ 88, 65 P.3d at 943.

¶ 19 The court went on to explain that our legislature has always assigned to one fact-finder the important tasks of determining and weighing the facts in capital cases:

> In both the superseded and current capital sentencing schemes, the legislature assigned to the same fact-finder responsibility for considering both aggravating and mitigating factors, as well as for determining whether the mitigating factors, when compared with the aggravators, call for leniency. Neither a judge, under the superseded statutes, nor the jury, under the new statutes, can impose the death penalty unless that entity concludes that the mitigating factors are not sufficiently substantial to call for leniency.

*Id.* at 562, ¶ 89, 65 P.3d at 943. These concerns, however, are presently inapplicable to Arizona's noncapital sentencing scheme, which, interpreted in light of *Blakely*, assigns complementary roles to both jury and judge in the sentencing process:

> There is nothing in the plain language of A.R.S. § 13–702(B) that prohibits a trial court from submitting aggravating factors to the jury. Moreover, nothing in A.R.S. § 13–702(B) prevents a jury from finding aggravating factors. Once a jury finds an aggravating factor, *Blakely* is satisfied, and A.R.S. § 13–702(B) allows a trial judge to impose an aggravated sentence after consideration of the factors enumerated in A.R.S. § 13–702.

*State v. Superior Court (Tinnell)*, 209 Ariz. 195, 197, ¶ 7, 98 P.3d 881, 883 (App.2004). *See also Apprendi*, 530 U.S. at 490–91 n. 16, 120 S.Ct. 2348 (noting "the distinction the Court has often recognized between facts in aggravation of punishment and facts in mitigation" and that judicial fact-finding of mitigating circumstances does not "expose[ ] the defendant to a deprivation of liberty greater than that authorized by the verdict"); *Strong v. State*, 817 N.E.2d 256, 262 (Ind.App.2004) ("[W]e do not discern from the *Blakely* decision that the trial court's sentencing authority of balancing and weighing mitigating and aggravating circumstances has been usurped."). Accordingly, *Ring III* 's requirement that additional aggravating factors must be found by a jury is inapplicable in the context of noncapital sentencing. *But see State v. Alire*, 209 Ariz. 517, 105 P.3d 163 (App.2005); *State v. Munninger*, 209 Ariz. 473, 104 P.3d 204 (App.2005); *State v. Timmons*, 209 Ariz. 403, 103 P.3d 315 (App.2005) (all rejecting the *Martinez* holding that a trial court's reliance on one *Blakely*-compliant aggravating factor permits the court to consider additional aggravating factors, not found by a jury, and weigh them against

mitigating circumstances in imposing an aggravated sentence).[9]

## II.

¶ 20 The dissent warrants a response. Our colleague concurs with the panel in *Munninger* in rejecting the principle that we, and the *Martinez* panel, find controlling: The existence of a single *Blakely*-compliant or (as here) *Blakely*-exempt aggravating factor raises the sentencing ceiling to the legislatively prescribed maximum, thereby permitting (indeed, requiring pursuant to § 13–702) judicial fact-finding in noncapital cases without violating *Blakely*. Instead, our dissenting colleague interprets *Apprendi* and *Blakely* as requiring that "all factors used to aggravate a sentence beyond that inherent in the jury's verdict, other than prior convictions or facts admitted by the defendant, must be found by the jury." *Infra* ¶ 45. *See also Munninger*, 209 Ariz. at 480–81, ¶ 21, 104 P.3d at 211–12 ("Our review of the decisions of the United States Supreme Court on point yields a clear direction that not just one, but all facts that can be used to increase punishment must be found by the jury."). For reasons already expressed in Part I of our Opinion, we respectfully disagree with our colleagues' view that the Sixth Amendment requires that any and all aggravating circumstances considered by the trial court in determining a sentence must be based upon facts found by the jury or admitted by the defendant.[10]

¶ 21 That the *Munninger* panel's and the dissent's overly broad interpretation of the scope of the *Apprendi/Blakely* rule misses the mark is made clear by the recent United States Supreme Court decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, —— L.Ed.2d —— (2005), applying *Blakely* to the Federal Sentencing Guidelines (Guidelines). After hearing evidence that Booker had 92.5 grams of crack cocaine in his duffel bag, the jury convicted him of possession with intent to distribute at least 50 grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). *Id.* at ——, 125 S.Ct. at 751. The Guidelines sentence authorized by the jury's verdict was 210 to 262 months in prison. *Id.* However, at a post-trial sentencing proceeding, the trial judge found that Booker had possessed an additional 566 grams of crack and that he had obstructed justice. *Id.* Under the Guidelines, these additional findings required that the judge select a sentence between 360 months and life imprisonment; the judge imposed a 360–month sentence, thereby exceeding the sentence authorized by the jury verdict alone. *Id.* at ——, ——, 125 S.Ct. at 746, 751. In the first of a two-part opinion, the "merits majority" (the same five-member majority of the Court that decided *Apprendi* and *Blakely*—Justices Stevens, Scalia, Souter, Thomas and Ginsburg) held *Blakely* applicable to the Guidelines. *Id.* at ——, 125 S.Ct. at 742. Justice Stevens, writing for the merits majority, explained that the relevant portions of Washington's determinate sen-

---

9. In *Alire,* the court reached the more limited holding "that a trial court's consideration of additional aggravating factors not found by the jury in determining a defendant's sentence does not violate the Sixth Amendment to the United States Constitution so long as (1) at least one aggravating circumstance is *Blakely*-compliant or exempt and (2) the court expressly has found that no mitigating circumstances exist." 209 Ariz. at 520–21, ¶ 14, 105 P.3d at 166–67. *Alire*'s additional requirement that the trial court must also find the absence of any mitigating circumstances is based on its belief that such a finding is required by *Ring III*. Although we agree with much of the analysis (and the outcome) in *Alire*, for reasons already discussed, we nonetheless disagree with its implicit conclusion that *Blakely* would have been violated had the trial court also found mitigating circumstances. We further note that, as a practical matter, *Alire* would require the State to prove all aggravating factors

(with the exception of prior convictions) to the jury because the (non)existence of mitigating factors is not determined before sentencing.

10. We also disagree with our dissenting collegue's reference to our decision as instituting a "trump rule," which implies that our decision treats defendants' Sixth Amendment rights as an outranked suit in a card game. To the contrary, we are applying *Blakely* in a manner that complies with defendants' rights under the Sixth Amendment but also remains faithful, to the extent possible, with Arizona's statutory scheme, which *requires* trial court judges to consider all relevant factors in determining appropriate sentences. *See* A.R.S. § 13–702(C)(21) (Supp.2003) (permitting consideration of "[a]ny other factor that the court deems appropriate to the ends of justice").

tencing scheme found unconstitutional in *Blakely* were essentially indistinguishable from the comparable provisions of the Guidelines. *Id.* at ——, 125 S.Ct. at 749. Thus, Booker was entitled to a jury determination of the sentence-increasing facts for the same reason that Apprendi and Blakely were so entitled: "The determination [in *Blakely* ] that the defendant acted with deliberate cruelty, like the determination in *Apprendi* that the defendant acted with racial malice, *increased the sentence that the defendant could have otherwise received.*" *Id.* (Emphasis added.) *See also id.* at ——, 125 S.Ct. at 748 ("Foreshadowing the result we reach today, we noted that our holding was consistent with a 'rule requiring jury determination of facts that *raise a sentencing ceiling* ' in state and federal sentencing guidelines systems.") (quoting *Jones,* 526 U.S. at 251 n. 11, 119 S.Ct. 1215) (emphasis added). Presaging his later argument—made in response to the second, or "remedial," majority opinion—that *Blakely* has only a slight impact on a judge's sentencing discretion, Justice Stevens noted that *Blakely* does not prevent a trial judge from finding and relying on additional aggravators in selecting an enhanced sentence: "Applying *Blakely* to the Guidelines would invalidate a sentence that relied on [a judicial finding that defendant committed perjury] if the resulting sentence was outside the range authorized by the jury verdict. Nevertheless, there are many situations in which the district judge might find that the enhancement is warranted, yet still sentence the defendant within the range authorized by the jury." *Id.* at ——, 125 S.Ct. at 753. Finally, in reaffirming the *Apprendi/Blakely* principle, the Court reworded it as follows: "Any fact (other than a prior conviction) which is *necessary to support a sentence exceeding the maximum* authorized by the facts established by a plea of guilty or a jury verdict

must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at ——, 125 S.Ct. at 756 (emphasis added).[11] Thus, the merits majority clearly acknowledged that *Blakely* 's jury-trial guarantee is limited to factual determinations that are legally *necessary* to the sentence imposed, and, notwithstanding contrary assertions by the panel in *Munninger* and the dissent, is inapplicable to judicial determination of other facts—including aggravating factors—ultimately used by the court to determine the appropriate sentence.

¶ 22 Later, Justice Stevens, writing the lead dissent to the remedial opinion (joined in by Justice Souter and in which Justice Scalia joined in relevant part), in criticizing the remedial majority's excision of the mandatory provisions in the Guidelines as unnecessary, emphasized that applying *Blakely* to the Guidelines as written would require only "limited jury factfinding," *id.* at ——, 125 S.Ct. at 780 n. 10, in part because "judicial factfinding to support an . . . enhancement is *only unconstitutional when that finding raises the sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant.*" *Id.* at ——, 125 S.Ct. at 775 (emphasis in original). Thus, as Justice Stevens pointed out, the Sixth Amendment violation in *Booker* could have been avoided entirely had the judge's finding that Booker possessed an additional 566 grams of cocaine been made by the jury, which would have authorized a Guidelines sentence anywhere between 324 and 405 months. *Id.* at ——, 125 S.Ct. at 772. In that event, "[r]elying on his own appraisal of the defendant's obstruction of justice, and presumably any other information in the presentence report, the judge would have had discretion to select any sentence within that range." *Id.*[12]

---

**11.** The comparable language in *Apprendi,* which was quoted in *Blakely,* is: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348).

**12.** To make the point clear that the Sixth Amendment does not *per se* prohibit judicial fact-finding

at sentencing, Justice Stevens uses a hypothetical situation to illustrate *Blakely* 's limited effect on the Guidelines:

Consider, for instance, a case in which the defendant's initial sentencing range under the Guidelines is 130–to–162 months . . . . Depending upon the particular offense, the sentencing judge may use her discretion to select any sentence within this range, even if her selection relies upon factual determinations beyond the facts found by the jury. If the defendant

¶ 23 Likewise, because Estrada's prior convictions exposed him to an aggravated sentence, "the judge [ ] had discretion to select any sentence within that range." In other words, as stated in *Martinez* in the context of a *Blakely*-compliant finding by a jury, the "verdict expanded the sentencing range and the scope of the trial court's sentencing discretion." 209 Ariz. at 284, ¶ 16, 100 P.3d at 34. By their contrary interpretations, both the panel in *Munninger*, 209 Ariz. at 479, ¶ 16, 104 P.3d at 210 ("[W]e disagree that a single properly found aggravating factor satisfies *Blakely* when the sentence also rests on other aggravating factors not found by a jury.") and the dissent, *infra* ¶ 45 ("The rule adopted by the majority today emasculates the principle that all factors used to aggravate a sentence beyond that inherent in the jury's verdict, other than prior convictions or facts admitted by the defendant, must be found by the jury."), place themselves at odds with the Supreme Court Justices who authored the opinions (*Apprendi* and *Blakely* ) upon which they rely. *See also Booker*, — U.S. at ——, 125 S.Ct. at 798 (Thomas, J., dissenting from remedial majority) ("[Rule 32(c)(1) [13] is valid when it requires the sentencing judge, without a jury, to resolve a factual dispute in order to decide where within the jury-authorized Guidelines range a defendant should be sentenced.").

¶ 24 Fortunately, the surgery performed by *Booker*'s remedial majority in transforming the Guidelines from a mandatory to an advisory system (undertaken to "maintain the judicial factfinding that Congress thought would underpin the mandatory Guidelines system," — U.S. at ——, 125 S.Ct. at 757) is probably unnecessary in Arizona because the sentencing scheme established by §§ 13–701 and –702 already allows substantial judicial discretion. Even when the trial court finds multiple aggravators, it is not required, with one exception, to impose an aggravated sentence. *See* § 13–702(A) ("Sentences provided in section 13–701 ... *may* be increased or reduced by the court within the ranges set by this subsection.") (emphasis added); § 13–702(D) ("In determining what sentence to impose, the court shall take into account the amount of aggravating circumstances and whether the amount of mitigating circumstances is sufficiently substantial to call for a lesser term."). The only circumstance in which a trial court must impose an aggravated sentence is when it finds one or more aggravators and no mitigators. *Supra* ¶ 11.

¶ 25 Furthermore, in Arizona, unlike the system of overlapping "bumps" incorporated in the Guidelines, the existence of a single aggravator authorizes a judge (in his or her discretion) to impose a sentence up to the statutory maximum. *Supra* ¶ 11. Therefore, assuming the presence of one *Blakely*-exempt or *Blakely*-compliant factor, superimposing *Blakely* onto the current Arizona statutory scheme "preserve[s] Sixth Amendment substance" by guaranteeing "in a meaningful way [ ] that the jury [ ] still stand[s] between the individual and the power of the government," *Booker*, — U.S. at ——, 125 S.Ct. at 752 (Stevens, J., merits majority), while also largely preserving the traditional ability of a trial court to make sentencing determinations based on its assessment of all relevant information regarding the defendant and the crime. Conversely, the *Munninger* panel's and the dissent's approach would substantially limit a trial judge's sentencing discretion

---

described above also possessed a firearm, the Guidelines would direct the judge to apply a two-level enhancement ..., which would raise the defendant's total offense level from 28 to 30. That, in turn, would raise the defendant's eligible sentencing range to 151–to–188 months. That act of judicial factfinding would comply with the Guidelines and the Sixth Amendment so long as the sentencing judge then selected a sentence between 151–to–162 months—the lower number (151) being the bottom of offense level 30 and the higher number (162) being the maximum sentence under level 28, which is the upper limit of the range supported by the jury findings alone.

*Id.* at ——, 125 S.Ct. at 774.

**13.** During the applicable time period, Federal Rule of Criminal Procedure 32(c)(1) provided in relevant part:

At the sentencing hearing, the court ... must rule on any unresolved objections to the presentence report .... For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

by completely eliminating its fact-finding role as to aggravating circumstances, a result that is neither constitutionally nor statutorily required. Moreover, the imposition of such a judicial straitjacket is contrary to sound sentencing policy. *See id.* at ——, 125 S.Ct. at 760 (Breyer, J., for remedial majority) ("To engraft the Court's constitutional requirement onto the sentencing statutes, however, would destroy the system. It would prevent a judge from relying upon a presentence report for factual information, relevant to sentencing, uncovered after the trial. In doing so, it would ... weaken the tie between a sentence and an offender's real conduct.").

¶ 26 In summary, Estrada's prior felony convictions, which are *Blakely*-exempt, raised the *"Blakely"* sentencing ceiling for his convictions for the offenses of burglary in the third degree and possession of burglary tools to 12 and 4.5 years, respectively. Hence, the trial court did not violate Estrada's Sixth Amendment jury-trial guarantee when it considered (and properly found)[14] additional aggravating factors not found by the jury, weighed them against the sole mitigating circumstance, and imposed aggravated sentences within the authorized ranges.

## CONCLUSION

¶ 27 For the reasons set forth in this Opinion we affirm Estrada's sentences.

TIMMER, J., concurring.

KESSLER, Judge, dissenting.

¶ 28 I respectfully dissent on the majority's affirming the sentence imposed in this

case. Consistent with the holdings of other panels of this Court,[15] I would hold that the mere presence of an aggravating factor that *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), does not require to be found by a jury ("*Blakely*-exempt factors") or the presence of one aggravating factor found by the jury ("*Blakely*-compliant factors") does not trump a defendant's constitutional right to have a jury determine all other factors ("*Blakely*-violative factors") used to aggravate a sentence beyond that warranted by the jury's verdict.[16] Accordingly, because the error here was reversible, I would remand to the superior court to determine whether it would have imposed the same sentence based solely on the *Blakely*-compliant and -exempt factors. If not, then the presence of other *Blakely*-violative factors must be found by a jury if an aggravated sentence is to be imposed.

¶ 29 I conclude we are bound by *State v. Ring,* 204 Ariz. 534, 561–62, ¶¶ 87–90, 65 P.3d 915, 942–43 (2003) (*"Ring III"*), which rejected the argument the majority adopts here. I also base my conclusion on: (1) the literal language of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely;* (2) the United States Supreme Court's application of that language which I read to effectively reject the position taken by the majority in this case; (3) the rejection of the "single factor rule" by other courts. *See People v. White,* 124 Cal.App.4th 1417, 22 Cal.Rptr.3d 586 (2004); and (4) the philosophy and purpose underlying the rulings in *Apprendi* and *Blakely.* I also disagree with the majority that the recent deci-

---

**14.** The *Munninger* panel asserts that *Martinez* "rests upon this proposition: Because a single aggravating factor can support an aggravated sentence, an aggravated sentence must be affirmed if a single aggravating factor was properly found, even though other aggravating factors used to increase the sentence were *erroneously* found." 209 Ariz. at 482, ¶ 24, 104 P.3d at 213 (emphasis added). However, in *Martinez,* the aggravating factor in the burglary and theft convictions—that the victim died—was implicit in the verdict and, therefore, *Blakely*-compliant. 209 Ariz. at 284, ¶ 16, 100 P.3d at 34. Accordingly, the trial court's consideration of additional factors pursuant to § 13–702 was not "erroneous."

**15.** *State v. Timmons,* 209 Ariz. 403, 406–07, ¶¶ 6–12, 103 P.3d 315, 318–319 (App.2005), and *State v. Munninger,* 209 Ariz. 473, ¶¶ 14–30, 104 P.3d 204, 210–14 (App.2005).

**16.** For purposes of simplicity only, I refer to the majority's holding on this issue to be the "single factor rule." My reference to the rule "trumping" a defendant's constitutional right describes the effect of the rule and not the intent of the majority of this panel or the panel in *State v. Martinez,* 209 Ariz. 280, 100 P.3d 30 (App.2004), *pet. for review granted* (Feb. 8, 2005). Our difference of opinion on how to apply *Blakely* is one on which reasonable minds can, and obviously do, differ.

sion in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, —— L.Ed.2d —— (2005), supports the majority's analysis on this issue.

*Ring III*

¶ 30 I begin with *Ring III*. There, the State made the same argument it makes here. It contended that because there was the presence of an aggravator which did not have to be found by the jury under *Apprendi*[17] and which increased the statutory maximum, the superior court was free to find additional aggravating factors.[18] The court in *Ring III* cited two independent reasons for rejecting that argument. First, it held that while:

> [a] narrow reading of *Ring II* [*Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ] may permit a judge to decide the existence of additional aggravating factors in the circumstances described by the State ... we conclude that *Ring II* requires a jury to consider *all* aggravating factors urged by the state and not either exempt from *Ring II*, implicit in the jury's verdict, or otherwise established beyond a reasonable doubt.

*Ring III*, 204 Ariz. at 561–62, ¶¶ 87–88, 65 P.3d at 942–43. Thus, the court rejected the "narrow" reading of the *Apprendi/Blakely* rule the majority adopts here.

¶ 31 Our supreme court cited "another factor" for rejecting the "single factor rule": in the capital sentencing scheme, the statutes assigned both the duty to consider aggravating and mitigating factors and to balance those factors to the jury. The court held it did not want to speculate how the State's proposed argument would impact that process. 204 Ariz. at 562, ¶ 89, 65 P.3d at 943. The majority conflates this second reason for rejecting the "single factor rule" with the first reason stated in *Ring III*.

¶ 32 Consistent with the above reasoning in *Ring III*, our supreme court has held that it will reverse death sentences in which the superior court relied on the presence of aggravating factors not admitted by the defendants and not found by juries even though there were other aggravating factors used that *Apprendi* did not require be found by a jury. *State v. Tucker*, 205 Ariz. 157, 168–69, ¶¶ 61, 66 & 68, 68 P.3d 110, 121–22 (2003). If the rule the majority adopts today applied, the court would not have vacated those sentences. Rather, the aggravated sentences would have been permissible because the presence of a single *Blakely*-compliant or -exempt factor would have eliminated the defendants' right to have the jury determine all the other factors considered by the court.

*Apprendi and Blakely*

¶ 33 The United States Supreme Court's language in *Apprendi* and *Blakely* also support rejecting the rule adopted by the majority. The Court stated in *Apprendi* that "any" and "all" facts, other than a prior conviction, had to be found by a jury. Thus, for example, the Court stated:

> The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a *fact* that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum *he would receive if punished according to the facts reflected in the jury verdict alone.*

530 U.S. at 482–83, 120 S.Ct. 2348 (emphasis added in part). Similarly, the Court stated: "[b]ut practice must at least adhere to the basic principles undergirding the requirements of trying to a jury *all facts* necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt." *Id.* at 483–84, 120 S.Ct. 2348 (emphasis added). Driving this point home a third time, the Court summarized its holding:

---

17. Reliance on *Apprendi* is appropriate because *Blakely* is an extension of the principles the Supreme Court set down in *Apprendi*. *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2536 ("This case requires us to apply the rule we expressed in *Apprendi* ....").

18. It is unclear whether the State's position is that the superior court finding *Blakely* factors in this context is not error or simply harmless error. That distinction does not change my analysis.

Other than the fact of a prior conviction, *any fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the *assessment of facts* that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Id.* at 490, 120 S.Ct. 2348 (quoting *Jones v. United States,* 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1997)) (emphasis added).

¶ 34 The Court continued with this principle when it applied *Apprendi* in *Blakely.* The Court began its analysis by clearly stating, "[t]his case requires us to apply the rule we expressed in *Apprendi* ... '[o]ther than the fact of a prior conviction, *any fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2536 (emphasis added). The Court repeated this point when it held:

Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose, *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* .... In other words, the relevant *"statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.* When a judge inflicts punishment that the jury's verdict alone does not allow, that jury has not found *all the facts* "which the law makes essential to the punishment ... and the judge exceeds his proper authority."

*Id.* at 2537, 124 S.Ct. 2531 (citations omitted) (emphasis added in part). Thus, the key to *Apprendi* and *Blakely* is that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker,* —— U.S. ——, ——, 125 S.Ct. 738, 756, 160 L.Ed.2d 621, —— (2005).

¶ 35 As the Court made clear in both *Apprendi* and *Blakely,* the jury must find the presence of aggravating factors other than prior convictions, facts admitted by the defendant or facts inherent in the jury verdict. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2537. If the Court had meant to state that the presence of any one of those factors eliminated the need for the jury to make additional findings, it would have done so. But it did not. As shown by the following comparison, the rule the majority adopts today would rewrite the fundamental holding in *Apprendi.*

| Language in *Apprendi* | Hypothetical Language if "Single Factor Rule" Applied |
| --- | --- |
| *"Other than* the fact of a prior conviction, *any fact* that increases the penalty for a crime beyond the prescribed statutory maximum [the maximum based on the jury verdict] must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). | *Unless* there is a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum [the maximum based on the jury verdict] must be submitted to a jury, and proved beyond a reasonable doubt. |

*The Supreme Court's Treatment of the "Single Factor" Argument*

¶ 36 In none of the *Apprendi*-line of cases has the United States Supreme Court dealt directly with the issue of whether the presence of one *Blakely*-compliant or -exempt factor permits the trial court to find other, *Blakely*-violative factors to aggravate the sentence beyond that authorized by the verdict. However, the Court appears to have rejected a type of "single factor rule" in *Apprendi* and *Ring II.* Apprendi and the

state entered into a plea agreement in which Apprendi would plead guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of a third-degree offense of unlawful possession of an antipersonnel bomb. Each second-degree offense carried a penalty range of five to ten years and the third-degree offense carried a range of three to five years. The parties agreed that the sentence on the third-degree offense would run concurrently with the sentences on the remaining counts. The state reserved the right to seek enhancement of one of the two second-degree counts as a hate crime, which could double the sentencing range to ten to twenty years. Thus, if the judge did not find a basis for enhancement, the maximum consecutive sentence would be twenty years (two ten-year consecutive terms). If the one count was enhanced, the maximum sentencing range would increase to thirty years (twenty years maximum on the enhanced count, ten years maximum on the other second-degree count and a concurrent term on the third-degree count). The judge found facts for enhancement and sentenced Apprendi to twelve years on the enhanced count with concurrent sentences on the other counts. *Apprendi*, 530 U.S. at 469–71, 120 S.Ct. 2348.

¶ 37 The state argued that even if the judge had not found racial bias, the twelve-year sentence was within the statutory maximum because without enhancement, the trial judge could have sentenced Apprendi to consecutive terms amounting to twelve years. The Court expressly rejected that argument:

> [C]ertain aspects of the case are not relevant to the narrow issue that we must resolve. First, the State has argued that even without the trial judge's finding of racial bias, the judge could have imposed consecutive sentences [on the two second-degree counts] that would have produced the 12-year term of imprisonment that Apprendi received; *Apprendi's actual sentence was thus within the range authorized by statute* for the three offenses to which he pleaded guilty .... *The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged*

*in that count.* The finding is legally significant because it increased—indeed, it doubled—the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10-year sentence on that count into a minimum sentence. The sentences on counts 3 and 22 have no relevance to our disposition than the dismissal of the remaining 18 counts.

*Id.* at 474, 120 S.Ct. 2348 (emphasis added).

¶ 38 Similarly, the Court explained in *Ring II* that the trial judge had imposed the death penalty because he found that the murder had occurred for pecuniary gain and the crime was heinous, cruel or depraved. After finding that *Apprendi* applied, the Court dealt with the State's argument that any error was harmless "because a pecuniary gain finding was implicit in the jury's guilty verdict." 536 U.S. at 609 n. 7, 122 S.Ct. 2428. Instead of characterizing the presence of that one factor as precluding an *Apprendi* analysis as to other factors, the Court stated it would not address the argument because it left the issue of harmlessness to the lower courts to rule on in the first instance. *Id.* Thus, such an argument was error—the question left unanswered was whether it was harmless error.

¶ 39 The above argument by the state in *Apprendi* and *Ring II* is similar in principle to the rule adopted by the majority in this case. Based on any one fact necessarily found in the jury verdict or admitted to by the defendant, the ultimate sentence is within the "statutory maximum" permitted by statute. It is a short step from the argument rejected in *Apprendi* and *Ring II* to the majority's position here that once any one *Blakely*-compliant or—exempt factor is present the statutory maximum has been raised and *Blakely* no longer applies. The Court rejected that type of reasoning in *Apprendi* and *Ring II* by focusing on the increase in the maximum sentence based on the judge's finding of a *Blakely*-violative factor regardless of the ultimate range which could have been imposed based on the guilty plea or the

conviction.[19]

### *People v. White*

¶ 40 At least one court in another jurisdiction has also rejected the rule adopted by the majority today. In *White*, the California Court of Appeal explained that several panels of the California Court of Appeal had held *Blakely* did not apply to California's determinate sentencing scheme. *White*, 124 Cal. App.4th at 1434–38, 22 Cal.Rptr.3d 586. The court further noted that two panels of that appellate court had held once there is one aggravating factor not requiring a jury finding, *Blakely* did not apply to any other factors.[20] *White* rejected that argument because it conflicted with the Supreme Court's application of the *Apprendi* rule. *Id.* at 1439–40, 22 Cal.Rptr.3d 586. As the court explained, "[t]he fact that there were other ways for the judge to have arrived at the same or a higher sentence . . . [was] of 'no . . . relevance.'" *Id.* at 1439, 22 Cal.Rptr.3d 586 (quoting *Apprendi*, 530 U.S. at 474, 120 S.Ct. 2348). Applying that reasoning, the court in *White* held:

> In view of the Supreme Court's assertion that hypothetical alternative scenarios should not be used as after-the-fact rationalizations for impermissible sentencing choices, we must respectfully disagree with the courts in *Jaffe* and *Barnes* to the degree that they support a conclusion that the existence of a single aggravating factor found by the jury or admitted by the defendant avoids *Blakely* and automatically justifies an upper term sentence. The relevant question is not whether we can conceive of a legitimate way for the trial court to have arrived at the 13–year sentence imposed on appellant. The question is whether the trial court would have exercised its discretion to impose the upper

term . . . if it knew that one or more of the factors relied on were invalid.

*Id.* at 1439–40, 22 Cal.Rptr.3d 586.

### *Philosophical Underpinnings of Blakely*

¶ 41 The rule adopted by the majority also conflicts with the philosophical underpinnings of *Blakely*. As the Supreme Court made clear in both *Apprendi* and *Blakely*, the basis for requiring a jury to find any and all contested aggravating factors, other than prior convictions, is in the historical notions imbedded in the Sixth Amendment to protect the people from overreaching and arbitrary sentences sought by the state and imposed by judges. *Apprendi*, 530 U.S. at 476–81, 120 S.Ct. 2348; *Blakely*, 542 U.S. at ——– ——, 124 S.Ct. at 2538–40. By ensuring that only a jury could find facts which might increase the sentence otherwise permitted by a verdict, the Court explained:

> "[T]o guard against a spirit of oppression and tyranny on the part of the rulers," and "as the great bulwark of [our] civil and political liberties," . . . trial by jury has been understood to require that "the truth of every accusation . . . should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . ."

*Apprendi*, 530 U.S. at 477, 120 S.Ct. 2348 (citation omitted) (emphasis deleted).

¶ 42 The "single factor rule" runs contrary to this philosophical underpinning. The need for such protection is not a mere formality. *Blakely* seeks to ensure that the government's power to deprive citizens of liberty, whether it be wielded by the executive or judicial branches of government, be limited by the bulwark of a jury of one's peers. *Booker*, —— U.S. at ——, 125 S.Ct. at 753 ("The Framers of the Constitution understood the threat of 'judicial despotism' that

---

**19.** Similarly, in *Blakely*, Washington State asserted that *Apprendi* allowed the defendant's 53–month sentence because it was well below the "statutory maximum" of 120 months under a Washington statute. 542 U.S. at ——, 124 S.Ct. at 2537. The Court rejected that argument because the "statutory maximum" to which the *Apprendi* rule refers is not necessarily the maximum sentence a court may impose under a state's statutory sentencing scheme. "Our precedents make clear . . . that the 'statutory maxi-

mum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* (citing *Ring II*, 536 U.S. at 602, 122 S.Ct. 2428).

**20.** *Id.* at 1438–39, 22 Cal.Rptr.3d 586. In one of those cases, the California Supreme Court has granted review to decide the issue. *People v. Jaffe*, 23 Cal.Rptr.3d 695, 105 P.3d 115 (2005).

could arise from 'arbitrary punishments upon arbitrary convictions' without the benefit of a jury in criminal cases.'" ") (quoting from The Federalist No. 83 at 499 (C. Rossiter ed.1961)).

¶ 43 The effect of the majority's decision here and in *Martinez* directly conflicts with the philosophical and historical underpinnings of *Blakely*. Under the rule adopted by the majority here, if a single *Blakely*-exempt or -compliant factor was present, which factor might not justify anything more than a slight increase in the sentence authorized by the jury, the trial judge could consider innumerable other aggravating factors which were *Blakely*-violative to impose the maximum sentence authorized by our statutes. For example, if the defendant admitted he had committed a class five felony ten years before and the judge indicated she would not impose more than one-day in excess of the sentence authorized by the verdict, under the "single factor rule" the judge could then consider all other factors listed in A.R.S. § 13–702(C), without them being found by the jury, to impose the maximum sentence permitted by law. Such an effect violates the philosophical and historical basis for having a jury make those factual determinations.

*The Majority's Arguments*

¶ 44 The majority, citing *Martinez*, 209 Ariz. at 285, ¶ 19, 100 P.3d at 35, reasons that the "single factor rule" violates neither *Ring III* nor *Blakely*. I cannot agree on either basis. As to *Ring III*, the majority appears to conflate the two independent reasons given for rejecting the "single factor rule" in the capital punishment context. That analysis ignores that in *Ring III*, our supreme court stated that the division of authority between the trial court and the jury in the capital context was merely "another factor" leading it to reject the "single factor rule." The first factor, that it simply did not agree with the "narrow" reading of *Ring II* proposed by the State, independently requires us to reject the "single factor rule." When dealing with the import of the constitutional right to have a jury find the factors to sentence a defendant, I see no reason to apply a different rule in the non-capital context.

¶ 45 The majority's analysis also fails to recognize that there should be no difference in treatment between capital and noncapital cases. As the court held in *Timmons*, 209 Ariz. at 406–07, ¶¶ 9–12, 103 P.3d at 318–19, A.R.S. § 13–702 requires that the same factfinder find all aggravating and mitigating factors and then weigh those factors to determine the appropriate sentence. Attempting to divide that authority between two factfinders, as rejected in *Ring III*, makes no sense. Moreover, as the court in *Munninger* explains, 209 Ariz. at 479–84, ¶¶ 16–34, 104 P.3d at 210–15, the presence of one aggravating factor is not necessarily enough to impose an aggravated sentence. The rule adopted by the majority today emasculates the principle that all factors used to aggravate a sentence beyond that inherent in the jury's verdict, other than prior convictions or facts admitted by the defendant, must be found by the jury.

¶ 46 The majority also contends that the rule it adopts does not violate *Blakely* because once any aggravating factor is properly found, the definition of the sentencing range is increased. Accordingly, an "aggravated" sentence which then may be imposed does not exceed the "maximum sentence" the judge may impose without making additional findings beyond those made by the jury. That analysis allows the tail to wag the dog. *See Blakely*, 542 U.S. at ——, 124 S.Ct. at 2539 (allowing a legislature to establish legally essential sentencing factors within limits amounts to allowing the tail to wag the dog of the substantive offense). Instead of complying with the principle underlying *Apprendi* and *Blakely* that the court cannot impose a sentence based on any *Blakely* factors not found by the jury, the majority's rule allows a court to impose just such a sentence by redefining what the statutory maximum sentence is.

¶ 47 Moreover, the majority's reasoning is impractical. It relies on the idea that *Blakely* only applies to any fact "legally essential" to the punishment. According to the majority, any one aggravator is all that is "legally necessary" to impose any aggravated sentence because that aggravator, in the absence of a mitigator, allows a maximum sentence.

**126**

That conclusion, however, is based solely on appellate hindsight, after the jury returns its verdict. It gives no practical guidance to the trial courts because no trial judge will know *in advance* of the verdict which possible aggravating factors the jury will find. Thus, trial judges faced with a list of ten possible aggravators will not send only one or two of them to the jury with the thought if the jury finds one present, the judge can then find all others. In that situation, it is just as likely the jury might find neither of one or two aggravators present. Instead, the trial judge will send all possible aggravators to the jury.

¶ 48 As the court stated in *Munninger*, 209 Ariz. at 482, ¶ 25, 104 P.3d at 213, the presence of one aggravating factor does not permit an aggravated sentence; rather, it is the balancing and weighing of all aggravating and mitigating factors which ultimately leads to the sentence imposed. Thus, while the trial court has discretion to weigh all such factors without violating *Blakely*, it may do so only after the jury finds the *Blakely* factors to be present.[21]

¶ 49 In *Blakely*, the Supreme Court explained that a "statutory maximum" sentence was a term of art:

[T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without any* additional findings. When a judge inflicts punishment that the *jury's verdict alone* does not allow, that jury has not found *all the facts* "which the law makes essential to the punishment" ... and the judge exceeds his proper authority.

542 U.S. at ——, 124 S.Ct. at 2537 (citation omitted) (emphasis added in part). How can the mere presence of one *Blakely*-compliant or -exempt factor automatically increase the "statutory maximum" to allow the judge to constitutionally find myriad other *Blakely* factors when "statutory maximum" means the maximum the judge may impose without any additional findings?

---

**21.** The majority also seeks to find support for its position in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). However, as the court in *Munninger* correctly points out, *Harris* does not deal with the use of aggravators to impose a more severe sentence than the

*The Effect of Booker*

¶ 50 The majority contends that *Booker* supports the "single factor rule". *Booker* does not deal with the issue presented in this case of whether the presence of one *Blakely*-compliant or—exempt factor permits a trial judge to find all other *Blakely*-violative factors present in imposing a sentence. Thus, it should not be relied upon to support the "single factor" rule. Moreover, as explained below, the federal sentencing scheme is very different from Arizona's scheme. However, if anything the reasoning and holdings in *Booker* implicitly, if not expressly, reject the rule the majority adopts today.

¶ 51 To understand the implied impact of *Booker*, it is important to first understand how the federal sentencing guidelines ("Guidelines") work. Generally, the distinction between Arizona and the Guidelines is that in Arizona, any and all of the aggravating factors found in A.R.S. § 13–702(C) can lead to an aggravated sentence beyond that authorized by the jury verdict. In contrast, the Guidelines provide that each offense has a specific level for a sentencing range coupled with a limited number of factors that can change that range. Any other aggravating factors cannot increase the sentence beyond that range.

¶ 52 On a simplified basis, the Guidelines create a grid of sentencing ranges. A court first finds the baseline sentencing level for the offense of which the defendant was convicted. That baseline is then modified by the defendant's prior history, adding points for prior incarcerations. This computation gives the court a sentencing range within which the judge may sentence the defendant absent other aggravating or mitigating factors. Thomas W. Hutchinson, *et al.*, *Federal Sentencing Law and Practice* §§ 1B1.1(a)-(g), 1B1.2(a)-(b) 1B1.3 and 4A1.1 (2004 ed.)

¶ 53 For example, robbery has a base offense level of twenty. *Id.* § 2B3.1(a). If the

presumptive permitted by the jury's verdict. *Munninger*, 209 Ariz. at 480, ¶ 20, 104 P.3d at 211. Rather, it only dealt with increasing the floor of the minimum sentence. Therefore, it should not be used to justify the "single factor rule."

defendant had a prior criminal history involving an incarceration exceeding thirteen months, the court would add three points to the offense level. *Id.* § 4A1.1(a). To determine the sentencing range in that simplified case, assuming only the base level offense and one fourteen-month prior incarceration, a judge would turn to the sentencing table found *id.* at 1552. A base offense level of twenty, with three points for incarceration would give the court a sentencing range of 37–46 months. A copy of the sentencing table is attached to this dissent.

¶ 54 The Guidelines permit two types of increases to the above sentencing. First, most offense levels list certain factors which would permit the district court to increase the level of the offense in the sentencing table. The district judge cannot take these factors into account in departing from the Guidelines' range. *Id.* § 1A1.1 at 6. Thus, in the above example for robbery, if the robbery involved a financial institution or a post office, it would be increased two levels to offense level 22. *Id.* 2B3.1(b)(1). Second, both 18 U.S.C. § 944(d) and the Guidelines permit an increase in sentence based on offender and offense factors not already considered by the specific offense Guidelines. Thus, for example, § 3A1.2 of the Guidelines permits an increase in offense level if the victim was a government official. Sections 5K2.0 and 5K.26 permit departures from the Guidelines' ranges based on offender characteristics not considered by specific Guidelines and offense characteristics such as whether a weapon was used in the crime.

¶ 55 The federal system is distinctly different from Arizona's sentencing system. The Guidelines create various ranges of sentences based on the offense and whether the jury finds certain factors to be present. Each range is keyed to the factors specific to that offense level. The trial judge may then consider any other non-prohibited offender-related or offense-related factors to increase the sentence. However, under *Booker,* while the judge may increase the sentence based on those latter factors, she may not exceed the range authorized by the verdict. Thus, in our robbery example, the sentence would be an offense level of twenty with three

criminal history points for a range of 37–46 months. If the judge found a weapon was used in the robbery, she could increase the sentence under Guidelines § 5K2.6. However, under *Booker,* that offense characteristic *cannot* be used to increase the sentence beyond the forty-six months.

¶ 56 In contrast in Arizona, each class of crime has its own range of minimum, presumptive and maximum sentences. If the defendant is convicted of that crime, the range is that authorized for that level of felony. Then, the sentence can be increased by innumerable offender-related and offense-related aggravating factors under A.R.S. § 13–702(C).

¶ 57 If applicable at all to Arizona, *Booker* would require rejection of the rule the majority adopts today. This is because the aggravating factors under § 13–702(C) are the same as the offender-related and offense-related factors under the federal system. Just as *Booker* provides those factors cannot be used to increase the sentencing range authorized by a specific Guideline, they cannot be used to increase the range authorized by the jury's verdict under the Arizona system.

¶ 58 In *Booker,* the Court made clear that without violating *Blakely,* the district court could only use its discretion to consider factors not found by the jury *if* it stayed within the sentencing range authorized by the sentencing table based on the jury verdict. Thus, for example, the majority first cites to Justice Stevens' statement that "[a]pplying *Blakely* to the Guidelines would invalidate a sentence that relied on such an enhancement [perjury] *if the resulting sentence was outside the range authorized by the jury verdict.* Nevertheless, there are many situations in which the district judge might find that the enhancement is warranted, yet still sentence the defendant *within the range authorized by the jury."* *Booker,* —— U.S. at ——, 125 S.Ct. at 753. (Emphasis added).

¶ 59 The above language does not support the rule the majority adopts here. It stands for the proposition that the district court can consider other factors not found by the jury without violating *Blakely,* but *only* if the

ultimate sentence stayed within "the range authorized by the jury verdict." [22]

¶ 60 Nor does the majority's reliance on Justice Stevens' dissent from the remedial opinion support the "single factor rule." This is because, again, Justice Stevens was saying the trial judge could consider enhancement or aggravating factors not found by the jury, but only if the ultimate sentence was within the range based on the factors found by the jury. —— U.S. at ——, 125 S.Ct. at 772.

¶ 61 Thus, the majority quotes Justice Stevens' dissent from the remedial opinion in *Booker*, which dissent emphasized that the Guidelines only require limited jury factfinding. —— U.S. at —— n. 10, 125 S.Ct. at 780 n. 10. However, in turning to that language, we find that Justice Stevens again stated that any judicial factfinding could not exceed the sentencing range authorized by the facts found by the jury: "[A] requirement that certain enhancements be supported by jury verdicts leaves the ultimate sentencing decision exclusively within the judge's hands— the judge, and the judge alone, would retain the discretion to sentence the defendant *anywhere within the required Guidelines range* and within overlapping Guidelines ranges when applicable." *Id.* at ——, 125 S.Ct. at 780 (emphasis added).

¶ 62 That the Court in *Booker* was holding that *Blakely* limited district judges to sentencing within the sentencing range based on the jury verdict is further re-enforced by the other language to which the majority points.

The majority states that Justice Stevens reasoned the judge could enhance the sentence beyond that found by the jury. *Supra,* ¶ 23. However, in the passage quoted by the majority, Justice Stevens explained that an enhancement by the district judge to a higher offense level based on factors not found by the jury would not violate *Blakely* only if the actual sentence under the increased offense level did not exceed the maximum sentence in the lower offense level based solely on the jury's verdict, that is, it fell within the overlap between the two sentencing ranges. *Id.* at ——, 125 S.Ct. at 775.[23]

¶ 63 That *Blakely* limited a trial court to a sentencing range authorized by the factors found by the jury verdict is finally highlighted by Justice Stevens' treatment of Booker himself. As the Supreme Court explained in *Booker*, the only fact found by the jury was that Booker possessed 92.5 grams of cocaine base. Based on that fact and Booker's prior history, the federal sentencing guidelines required the district court to select a base sentence of from 210 to 262 months. However, the judge found that Booker possessed 566 grams of the drug and had obstructed justice. Based on the higher amount of the drug alone, the Guidelines' sentencing range was twenty-seven to thirty years. Based on both the increased amount of the drug and the obstructing factor, the sentencing range was thirty years to life. The judge sentenced Booker to 30 years (360 months) in prison. *Booker,* —— U.S. at —— & ——, 125 S.Ct. at 746 & 772. The Court held that

**22.** The majority also cites to Justice Stevens' "reformulation" of the *Blakely* rule that: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." —— U.S. at ——, 125 S.Ct. at 756. The majority reads this language to mean that once any single *Blakely*-compliant or -exempt factor is present which increases the maximum sentence authorized by the jury verdict, the trial judge is free to consider all other aggravating factors without regard to *Blakely*. I simply do not read such a broad meaning into what was the Court's summary of the *Blakely* rule. Moreover, the majority's interpretation of that summary runs counter to the rest of the language in *Booker* cited by the majority and discussed in this

dissent which limits the trial court's sentencing authority to the range which was authorized by the jury verdict.

**23.** Each sentencing range also has written into it an overlap in the range for the levels immediately above and below it. *Booker,* —— U.S. at ——, 125 S.Ct. at 775. Thus, for our robbery example the sentencing table provides that an offense level of twenty with three criminal history points, leads to a range of 37–46 months. Sentencing ranges nineteen and twenty-one, with the same number of points, have ranges of 33–41 months and 41–51 months, respectively. An enhanced sentence under offense level twenty-one would still be lawful provided it was no more than 46 months, the maximum permitted under offense level twenty.

such a sentence was invalid under *Blakely* because the jury did not find those facts.

¶ 64 Justice Stevens, dissenting from the Court's remedial opinion, wrote if the 566 gram finding had been made by the jury, that finding would have authorized a Guidelines sentence between 27 and 34 years given Booker's criminal history and "[r]elying on his own appraisal of the defendant's obstruction of justice, and presumably any other information in the presentence report, the judge would have had discretion to select any *sentence within that range." Id.* at 772 (emphasis added). Thus, the ultimate sentence imposed, even relying on other supposed aggravating factors, could *not* have exceeded the range authorized if the jury had found the 566 grams factor.

¶ 65 That Justice Stevens was not adopting the rule suggested by the majority is further supported by the statement in his dissent that "[b]ecause the Guidelines as written possess the virtue of combining a mandatory determination of sentencing ranges and discretionary decisions *within those ranges,* they allow ample latitude for judicial factfinding that does not even arguably raise any Sixth Amendment issue." *Id.* (emphasis added). Again, Arizona does not have those mandatory ranges based on specific factors. Moreover, it is only when the district judge keeps the sentence within the range permitted by the factors found by the jury's verdict (and the prior criminal history) that the *Blakely* issue does not arise.

¶ 66 In sum, *Booker* does not support the rule adopted by the majority today. As the Court made clear repeatedly in *Booker,* the district judge can enhance or increase a sentence by finding facts not found by the jury, but only when that sentence is within the sentencing range authorized by factors found by the jury in its verdict. Arizona's system does not have various ranges of sentencing based on specific factors, but only ranges based on the offense itself. Any use of offender-related or offense-related factors, *i.e.,* § 13–702(C) factors, cannot increase the sentence unless they are found by the jury.

*Resolution*

¶ 67 Here, the superior court found a number of aggravating factors to be present in imposing an aggravated sentence. The Arizona Court of Appeals is divided on whether *Blakely* error is subject to harmless error analysis or amounts to structural error. *Compare State v. Henderson,* 209 Ariz. 300, 310–11, ¶ 33, 100 P.3d 911, 921–22 (App.2004) (holding error subject to harmless error analysis), *with id.* at 316, ¶ 58, 100 P.3d at 927 (Weisberg, J., concurring and stating that such error is structural in nature); *State v. Resendis–Felix,* 209 Ariz. 292, 294, ¶ 8, 100 P.3d 457, 459 (App.2004) (harmless error rule applies to *Blakely* error), *with id.* at 296–99, ¶¶ 12–25, 100 P.3d at 461–64 (Eckerstrom, J., concurring; *Blakely* error is structural error). While I agree that this type of error is structural in nature for many of the reasons stated by the concurrences in those two decisions,[24] even if such error were subject to

---

**24.** Generally, courts have attempted to define structural error by limiting the error to those that pervade the entire process and interfere with the truth-seeking function of the trial. *E.g., Ring III,* 204 Ariz. at 552–53, ¶¶ 45–46, 65 P.3d at 933–34. However, at the same time, courts have used a lower standard for structural error, finding such error present where a defendant is denied his right to talk to his attorney during a recess or for closing an evidentiary hearing, neither of which types of error pervades the entire trial or affects the reliability of the truth-seeking function of the trial. *Ring III,* 204 Ariz. at 552–53, ¶ 46 nn. 9–10 & 16, 65 P.3d at 933–34 nn. 9–10 & 16 (explaining that these two types of error are structural in nature and citing *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), and *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)).

Indeed, this problem with the definition of structural error has been recognized by at least four United States Supreme Court justices who stated that "certain constitutional rights are not, and should not be, subject to harmless-error analysis because those rights protect important values that are unrelated to the truth-seeking function of the trial" which might abort the basic trial process and render a trial fundamentally unfair. *Arizona v. Fulminante,* 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (White J., dissenting) (quoting Justice Stevens' concurrence in *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). In any event, the error here pervaded the entire sentencing aspect of the trial, thus rendering it structural error under even the more traditional tests for such error.

harmless error analysis I cannot say that if the aggravating factors here had been presented to the jury, it would have found such factors so as to render the error harmless. *Tucker*, 205 Ariz. at 168–69, ¶¶ 57 & 67, 68 P.3d at 121–22 (sentence vacated when court could not determine on appeal whether jury would have found defendant acted knowingly so as to aggravate sentence or would have found mitigation witness not credible); *Resendis–Felix*, 209 Ariz. at 295, ¶ 11, 100 P.3d at 460 (error not harmless when many of the aggravating factors were subjective in nature). Given that one of the factors used by the trial court and not found by the jury, the emotional trauma to the victim, was subjective, I cannot find beyond a reasonable doubt that a jury would have found that factor. I would hold the sentences were fundamental, reversible error.

¶ 68 Accordingly, I would vacate the sentences and remand for further proceedings consistent with the views I have set forth in this dissent.

# SENTENCING TABLE
### (in months of imprisonment)

| | Offense Level | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
|---|---|---|---|---|---|---|---|
| | | **Criminal History Category (Criminal History Points)** | | | | | |
| | 1 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| | 2 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 1-7 |
| | 3 | 0-6 | 0-6 | 0-6 | 0-6 | 2-8 | 3-9 |
| Zone A | 4 | 0-6 | 0-6 | 0-6 | 2-8 | 4-10 | 6-12 |
| | 5 | 0-6 | 0-6 | 1-7 | 4-10 | 6-12 | 9-15 |
| | 6 | 0-6 | 1-7 | 2-8 | 6-12 | 9-15 | 12-18 |
| | 7 | 0-6 | 2-8 | 4-10 | 8-14 | 12-18 | 15-21 |
| | 8 | 0-6 | 4-10 | 6-12 | 10-16 | 15-21 | 18-24 |
| Zone B | 9 | 4-10 | 6-12 | 8-14 | 12-18 | 18-24 | 21-27 |
| | 10 | 6-12 | 8-14 | 10-16 | 15-21 | 21-27 | 24-30 |
| Zone C | 11 | 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |
| | 12 | 10-16 | 12-18 | 15-21 | 21-27 | 27-33 | 30-37 |
| | 13 | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| | 14 | 15-21 | 18-24 | 21-27 | 27-33 | 33-41 | 37-46 |
| | 15 | 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |
| | 16 | 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |
| | 17 | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63 |
| | 18 | 27-33 | 30-37 | 33-41 | 41-51 | 51-63 | 57-71 |
| | 19 | 30-37 | 33-41 | 37-46 | 46-57 | 57-71 | 63-78 |
| | 20 | 33-41 | 37-46 | 41-51 | 51-63 | 63-78 | 70-87 |
| | 21 | 37-46 | 41-51 | 46-57 | 57-71 | 70-87 | 77-96 |
| | 22 | 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |
| | 23 | 46-57 | 51-63 | 57-71 | 70-87 | 84-105 | 92-115 |
| | 24 | 51-63 | 57-71 | 63-78 | 77-96 | 92-115 | 100-125 |
| | 25 | 57-71 | 63-78 | 70-87 | 84-105 | 100-125 | 110-137 |
| | 26 | 63-78 | 70-87 | 78-97 | 92-115 | 110-137 | 120-150 |
| Zone D | 27 | 70-87 | 78-97 | 87-108 | 100-125 | 120-150 | 130-162 |
| | 28 | 78-97 | 87-108 | 97-121 | 110-137 | 130-162 | 140-175 |
| | 29 | 87-108 | 97-121 | 108-135 | 121-151 | 140-175 | 151-188 |
| | 30 | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| | 31 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| | 32 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| | 33 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| | 34 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| | 35 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| | 36 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| | 37 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life |
| | 38 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life | 360-life |
| | 39 | 262-327 | 292-365 | 324-405 | 360-life | 360-life | 360-life |
| | 40 | 292-365 | 324-405 | 360-life | 360-life | 360-life | 360-life |
| | 41 | 324-405 | 360-life | 360-life | 360-life | 360-life | 360-life |
| | 42 | 360-life | 360-life | 360-life | 360-life | 360-life | 360-life |
| | 43 | life | life | life | life | life | life |

November 1, 2003