100 P.3d 30

**STATE of Arizona, Appellee,**

v.

**Pablo Arciniega MARTINEZ, Appellant.**

**No. 1 CA–CR 03–0728.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 4, 2004.

Review Granted Feb. 8, 2005.

---

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Michael T. O'Toole, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Stephen Whelihan, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

THOMPSON, Judge.

¶ 1 In this opinion we address issues presented by the United States Supreme Court's recent decision in *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We hold that a judge's imposition of an aggravated sentence that falls

within the range authorized by a jury's verdict comports with *Blakely;* a jury need not find *every* aggravator upon which a sentencing judge relies. Further, we hold that *Blakely* error is subject to harmless error or fundamental error analysis and may or may not require reversal based on the facts of a particular case. Here, defendant's sentences were within the statutory range authorized by the jury's verdict, and therefore there was no fundamental error as to the sentences. In addition, we conclude that any error was harmless.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On September 1, 2000, Mabel Lopez's truck crashed through the fence of a residence approximately 1.5 miles from her home, and the occupants fled the vehicle. When an officer went to Lopez's home to verify whether the truck had been stolen, the door to her home was open, but no one answered the door. Lopez was found dead in her home the next day. She had died of hemorrhagic shock from bleeding caused by multiple stab wounds. There was blood on a table in the room, on the floor nearby, in a trail leading to where the body was found, and spattered and smeared on a wall near the body. Telephones and portions of telephones, as well as a telephone stand, were found near the body.

¶ 3 Lopez's home had an apartment separate from the main part of the residence. A bloody knife was found in the bathroom of the apartment, and blood was on the bathroom light switch. In a clothes hamper in the bathroom, police found a camouflage shirt with blood on the cuff, a black pair of pants, and a sleeveless white t-shirt with blood on it. DNA tests revealed that the blood on the light switch, the camouflage shirt, and the bloody knife was Lopez's.

¶ 4 Bloody shoe prints were also found on the floor of the family room. One of the shoe prints was made by defendant's right shoe, which he was wearing when he was arrested. Three other shoe prints were consistent with the size and tread pattern of defendant's

shoe, while two were inconsistent with defendant's shoe but consistent with the size and tread pattern of a shoe Miguel Cruz was wearing when he was arrested. Defendant's fingerprint was found on Lopez's microwave oven door. Lopez's blood also was found on the passenger side floor mat and on the console in her truck, and defendant's fingerprint was found on the top edge of the truck's tail gate.

¶ 5 On September 15, 2000, police learned that two suspects in Lopez's murder were at 920 East Carter Street. A SWAT team was assigned to watch the residence, and officers obtained a search warrant. As the officers prepared to enter the residence, defendant and Cruz exited the rear of the house and were arrested. Police searched the home and found a pair of tan pants stained with Lopez's blood in one of the bedroom closets of the home as well as some blood-stained white athletic socks.

¶ 6 After he was arrested, police interviewed defendant. During the interview, defendant confessed that he and Cruz had killed Lopez. Defendant was charged with one count of first-degree murder, for causing Lopez's death with premeditation; one count of burglary in the second degree, for entering or remaining in Lopez's residence with the intent to commit a theft or felony therein; and one count of theft of a means of transportation, for controlling Lopez's truck with intent to permanently deprive her of its use.

¶ 7 After a jury trial, the jury rendered a guilty verdict on all counts as charged. The jury then considered evidence in aggravation, concluding that the state failed to prove the allegations that the murder was committed for pecuniary gain and/or in an especially cruel, heinous, or depraved manner.

¶ 8 The trial court imposed a sentence of natural life for the first-degree murder charge, a consecutive sentence of seven years' imprisonment on the burglary charge, and a sentence of seven years' imprisonment for the charge of theft of a means of transportation, consecutive to the second sentence. We have jurisdiction of defendant's timely appeal.[1] *See* Ariz. Const. art. 6, § 9; Ariz.

---

1. By separate unpublished decision filed this

date, we address additional issues raised on ap-

Rev.Stat. (A.R.S.) §§ 12–120.21(A)(1), 13–4031, and 13–4033(A) (2003).

## DISCUSSION

■ ¶ 9 In a supplemental brief, defendant contends that the trial court improperly imposed an "aggravated" natural life sentence for the murder charge and aggravated, rather than presumptive, sentences for the burglary and theft charges, citing the United States Supreme Court's decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). As the state points out, defendant failed to raise these claims in the trial court. Thus, he has waived these claims absent fundamental error. *See State v. Jones*, 185 Ariz. 471, 480, 917 P.2d 200, 209 (1996).

¶ 10 In *Blakely*, the Supreme Court held that the imposition of an aggravated sentence without a finding of any aggravating factor by a jury violates the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536. The Court further noted that, under the *Apprendi* rule, the maximum sentence authorized for an offense is the sentence that could be imposed based solely on the facts admitted by the defendant or reflected in the jury's verdict. *Blakely*, 124 S.Ct. at 2537.

### A. Murder Sentence

■ ¶ 11 Under A.R.S. § 13–703(A) (2000), a person convicted of first-degree murder may receive a sentence of death, natural life (life in prison without the possibility of release), or life with the possibility of release (life in prison without possibility of release for twenty-five years). After the

jury found that the state had not proven the aggravating factors alleged to make defendant death-eligible, the trial court considered the aggravating and mitigating factors set forth in A.R.S. § 13–703 and imposed a natural life sentence.[2] Defendant contends that the "statutory maximum" term of imprisonment for murder, based upon the jury's verdict, is life with the possibility of release, and that any facts that would increase the term to natural life were required to be found by the jury, not the trial court.

¶ 12 The trial court's consideration of aggravating factors in imposing the natural life sentence does not violate the holding in *Blakely*. *Blakely* precludes the court from imposing a sentence in excess of the sentence authorized by the jury's verdict. First-degree murder "is punishable by death or life imprisonment as provided by § 13–703." A.R.S. § 13–1105(C) (2000). Thus, absent aggravating factors sufficient to support imposition of the death penalty, the statutory penalty for first-degree murder is life imprisonment. *See Ring v. Arizona*, 536 U.S. 584, 597, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (*Ring II*) ("Based solely on the jury's verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment."); *State v. Ring*, 200 Ariz. 267, 279, ¶ 42, 25 P.3d 1139, 1151 (2001) (*Ring I*) ("The range of punishment allowed by law on the basis of the verdict alone is life imprisonment with the possibility of parole or imprisonment for 'natural life' without the possibility of release.").

■ ¶ 13 In *Blakely*, the Court specifically distinguished the situation where judicial sentencing factors merely impact the minimum punishment available from that where they increase the maximum punishment above that authorized by the verdict. 124

peal that are not relevant to our analysis in this opinion and do not meet the standards of publication. *See* Ariz. R.Crim. P. 31.26 (providing for partial publication).

2. Before the legislature enacted A.R.S. § 13–703.01(Q) in 2003, the court was required to consider the aggravating and mitigating factors set forth in A.R.S. § 13–703 to determine whether to impose a sentence of natural life or life with

the possibility of release. *See State v. Viramontes*, 204 Ariz. 360, 362, 64 P.3d 188, 190 (2003). The trial court in this case complied with *Viramontes* in imposing the natural life sentence. Section 13–703.01(Q) now requires the court to consider the aggravating factors set forth in A.R.S. § 13–702 (2003) in deciding whether to impose a sentence of natural life.

S.Ct. at 2538. It is only in the latter case that a defendant's due process right to trial by jury is implicated. *See Harris v. United States,* 536 U.S. 545, 567, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ("Within the range authorized by the jury's verdict, however, the political system may channel judicial discretion—and rely on judicial expertise—by requiring defendants to serve minimum terms after judges make certain factual findings."). Because a guilty verdict for first-degree murder authorizes the court to impose a life sentence either with or without the possibility of release, the court may properly consider the statutory sentencing factors, without the need for jury findings regarding those factors, in deciding whether to allow the possibility of release. *See State v. Cox,* 201 Ariz. 464, 469, ¶ 18, 37 P.3d 437, 442 (App.2002) (*Apprendi* does not require jury finding on A.R.S. § 13–604.02(B) allegation, which mandates minimum sentence and eliminates possibility of early release, because it does not increase sentence beyond statutory maximum authorized by jury's verdict). *See also State v. Fell,* 209 Ariz. 77, 86, ¶ 29, 97 P.3d 902, 911 (App.2004) ("*Blakely* does not apply to a trial court's decision whether to sentence a defendant convicted of first-degree murder to a term of natural life imprisonment or life with the possibility of parole.").

¶ 14 The trial court properly decided whether defendant would be eligible for release after twenty-five years in conformance with *State v. Viramontes,* 204 Ariz. 360, 64 P.3d 188 (2003). There was no error in the court's imposition of the natural life sentence, much less fundamental error.

## B. Burglary and Theft Sentences

¶ 15 In Arizona, the court must impose the presumptive sentence unless "circumstances alleged to be in aggravation or mitigation of the crime are found to be true . . . ." A.R.S. § 13–702(B). Thus, the statutory maximum sentence authorized by the jury's verdict is the presumptive term. *See Blakely,* 124 S.Ct. at 2537 (maximum sentence authorized for an offense is the sentence that could be imposed based solely on facts admitted by defendant or reflected in the jury's verdict). For defendant's bur-

glary and theft convictions (both class 3 felonies), the presumptive term is 3.5 years. *See* A.R.S. §§ 13–1507(B); 13–1814(C); 13–701(C)(2) (2000).

¶ 16 The trial court imposed an aggravated sentence of seven years for each of these counts. Specifically, the trial court found as aggravating factors: (1) the presence of an accomplice, (2) the use of a knife as a weapon, (3) the severe injuries and death of the victim, (4) the emotional and physical pain suffered by the victim, (5) the emotional and financial harm to the victim's family, (6) the brutal nature of the crime, (7) pecuniary gain, and (8) the victim's age. The aggravating factor that the victim died was implicit in the jury's verdict, since the jury found defendant guilty of first-degree murder. Because the jury found at least one aggravating factor, defendant was eligible to receive an aggravated sentence, and the trial court's weighing of additional aggravating and mitigating circumstances to determine the appropriate sentence within the aggravated range was permissible. Put another way, the jury having found the existence of one aggravating factor, its verdict expanded the sentencing range and the scope of the trial court's sentencing discretion. When one aggravating factor is authorized by the jury, *Blakely* is satisfied. As we held in *State v. Superior Court (Tinnell),* 209 Ariz. 195, 198, ¶ 12, 98 P.3d 881, 884 (Ariz.App. Oct. 14, 2004), if the jury determines that

> the state has proven the existence of any alleged aggravating factor . . . it will have found the facts necessary to allow the trial judge to impose an aggravated sentence under A.R.S. § 13–702(B). Once authorized to sentence within the statutory range for aggravated sentences, the facts "legally essential to the punishment" have been found. *Blakely,* 124 S.Ct. at 2543. Other factors in aggravation or mitigation may then be considered.

¶ 17 Neither *Apprendi* nor *Blakely* support defendant's argument that aggravated sentences for burglary and theft in this case violate the constitutional right to trial by jury. In both *Apprendi* and *Blakely,* an aggravated sentence was improperly imposed in that the only aggravating factor was found

by the judge and not a jury. *See Blakely,* 124 S.Ct. at 2543; *Apprendi,* 530 U.S. at 491–92, 120 S.Ct. 2348. Neither holding restricts the sentencing judge from using other statutory factors to determine the sentence within the range authorized by the jury verdict, which in this case includes the jury's finding as to the victim's death. *Harris* expressly confirms the propriety of the judge's consideration of such other factors:

> Yet not all facts affecting the defendant's punishment are elements. After the accused is convicted, the judge may impose a sentence within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed. Though these facts may have a substantial impact on the sentence, they are not elements, and are thus not subject to the Constitution's indictment, jury, and proof requirements.

536 U.S. at 549, 122 S.Ct. 2406.

¶ 18 Further, sustaining the judge's authority to make findings as to relevant sentencing factors in determining punishment within the range allowed by the jury's finding of a statutory aggravating factor comports with the Supreme Court's assurance in *Blakely* that "[n]othing we have said impugns" the "salutary objectives" of determinate sentencing schemes based on judicial fact finding. 124 S.Ct. at 2540.

¶ 19 We are aware that in *State v. Ring,* 204 Ariz. 534, 561–62, ¶ 88, 65 P.3d 915, 942–43 (2003) (*Ring III*), our supreme court held that, under Arizona's sentencing scheme for *capital* sentencing, all aggravating factors used to impose a death sentence must be found by the jury. In *Ring III,* the court considered that Arizona's death penalty schemes, before and after *Ring II,* have "assigned to the same fact-finder responsibility for considering both aggravating and mitigating factors, as well as for determining whether the mitigating factors, when compared with the aggravators, call for leniency." *Ring III,* 204 Ariz. at 562, ¶ 89, 65 P.3d at 943. Therefore, the court concluded that such mingling of sentencing authority

between the judge and jury would not be compatible with our capital sentencing arrangements. *Id.* By contrast, Arizona's *non-capital* felony sentencing provisions *have* accommodated a scheme where some factual determinations which increase a defendant's sentence are found by the jury while others are found by the judge, with the ultimate sentencing decision made by the latter. *See e.g., State v. Beasley,* 205 Ariz. 334, 341, ¶¶ 32–33, 70 P.3d 463, 470 (App.2003); A.R.S. § 13–702. Thus, the express recognition in *Harris* that other aggravating factors will be determined by the court in imposing sentence is compatible with Arizona's non-capital sentencing scheme, though some facts will have been determined by the jury.

¶ 20 The jury's finding that the victim of the burglary and theft died at defendant's hand authorized sentences of up to seven years in prison. Therefore, defendant's sentences for burglary and theft comport with *Blakely,* and the trial court did not err in imposing the sentences.

█ ¶ 21 The evidence also overwhelmingly showed that defendant committed the offenses with an accomplice and that the victim was elderly.[3] The failure to have the jury find that defendant acted with an accomplice or that the victim was elderly was harmless beyond a reasonable doubt. The trial court's imposition of aggravated terms based on the aggravating factors it found did not constitute fundamental error, though the jury did not find all the aggravating circumstances. *See State v. Sepahi,* 206 Ariz. 321, 324 n. 3, ¶ 19, 78 P.3d 732, 735 n. 3 (2003) ("[A]ny *Apprendi* error would be harmless.").

## CONCLUSION

¶ 22 For the foregoing reasons, we affirm the trial court's imposition of a natural life sentence for the murder conviction and aggravated sentences for the theft and burglary convictions.

---

3. The evidence at trial was that the victim was sixty-nine years old. Arizona law provides that whether "[t]he victim of the offense is sixty-five or more years of age" is an aggravating circumstance. A.R.S. § 13–702(C)(13).

286

CONCURRING: MAURICE PORTLEY, Presiding Judge and DANIEL A. BARKER, Judge.