IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,           )     2 CA-CR 2003-0075
                                )     DEPARTMENT B
                    Appellee,   )
                                )     **O P I N I O N**
          v.                    )
                                )
JESUS ANTONIO ALEMAN,           )
                                )
                    Appellant.  )
                                )

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. 2000026839

Honorable Gilberto V. Figueroa, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Diane M. Acosta                          Tucson
                                                      Attorneys for Appellee

Harriette P. Levitt                                               Tucson
                                                       Attorney for Appellant

---

P E L A N D E R, Chief Judge.

**¶1**          After a jury trial, appellant Jesus Aleman was convicted of two counts of

second-degree murder, four counts of aggravated assault, and three counts of aggravated

driving while under the influence of an intoxicant (DUI).  The trial court sentenced him to

a combination of concurrent and consecutive prison terms totaling eighteen years on the murder and aggravated assault convictions, and a consecutive, ten-year term of supervised probation, a condition of which was a four-month prison term, on the aggravated DUI convictions. Aleman received mitigated, ten-year, concurrent sentences on the murder convictions but slightly aggravated, eight-year sentences on the aggravated assault convictions.

¶2       In the sole issue raised on appeal, Aleman contends the trial court erroneously denied his pretrial motion to suppress evidence of blood test results, arguing A.R.S. § 28-673(C) is unconstitutional and, even if it is not, the blood draw pursuant to that statute was illegal. We do not address that issue because we conclude the trial court did not err in alternatively finding the blood draw authorized under A.R.S. § 28-1388(E). We also reject Aleman's challenge to his aggravated sentences, raised in supplemental briefing and based on *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Accordingly, we affirm.

**BACKGROUND**

¶3       "In reviewing the denial of a motion to suppress evidence, we view the facts in the light most favorable to upholding the trial court's ruling . . . [and consider] only the evidence presented at the suppression hearing." *State v. Wyman*, 197 Ariz. 10, ¶ 2, 3 P.3d 392, 394 (App. 2000); *see also State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). On April 29, 2000, a car driven by Aleman crossed the centerline of a two-lane highway and collided head-on with an approaching minivan. Aleman was seriously injured and two passengers in his car were killed in the collision. The four family-member

2

occupants of the minivan, two of whom were minors, were seriously injured. Law enforcement officers who responded to the accident scene found Aleman in and out of consciousness and trapped behind his car's steering wheel. Fire department personnel had to cut Aleman out of the car. The two passengers in Aleman's car were pronounced dead at the scene.

¶4        One officer testified that he had seen open alcoholic beverage containers in the car and on the roadway and that fire department personnel had told him they had detected the odor of an intoxicating beverage on Aleman's breath and person. Another officer testified he had seen beer cans in Aleman's car and had smelled a "distinct strong odor" of alcohol coming from Aleman. He also testified that from just outside the car by the driver's door, he had noticed the odor of alcohol became stronger when Aleman attempted to speak to the passenger in the front seat. A supervising officer at the scene also detected an odor of alcohol from Aleman's car and was told by another officer that Aleman was "under the influence of alcohol."

¶5        Aleman was transported to a hospital, where he became "extremely uncooperative." A hospital phlebotomist testified that Aleman had attempted to get off of the examination table, and it had taken about eight people to hold him down. The phlebotomist considered this a severe trauma case and testified that blood draws are "mandatory" for every trauma patient seen at the hospital. The hospital's trauma pack contained between five to seven blood vials. Regardless of the total number of vials, every pack contained two gray-topped vials that were specifically and routinely drawn for law enforcement purposes in every trauma case. The phlebotomist testified that she had drawn

3

a "full trauma pack" on Aleman and that the two gray-topped vials were set aside in a locked area for law enforcement purposes.

¶6        Within a few hours, Officer Encisco of the Pinal County Sheriff's Department retrieved the two gray-topped blood vials from the hospital, took them to the sheriff's office, and stored them for evidence. The supervising officer testified that he had instructed Encisco to retrieve Aleman's blood sample from the hospital after another officer had informed the supervisor that emergency personnel had smelled an odor of alcohol on Aleman.

¶7        Before trial, Aleman moved to suppress evidence of the blood test results,[1] arguing the blood samples had been obtained without a warrant, in violation of his Fourth Amendment rights. Following the suppression hearing, the trial court denied Aleman's motion, finding that law enforcement had properly obtained his blood sample pursuant to § 28-673(C) and, alternatively, § 28-1388(E). This appeal followed Aleman's ensuing convictions and sentencing.

## DISCUSSION

### I.  Motion to suppress

¶8        "We review the trial court's ruling on a motion to suppress for clear and manifest error." *State v. Clary*, 196 Ariz. 610, ¶ 8, 2 P.3d 1255, 1256-57 (App. 2000); *see also State v. Howard*, 163 Ariz. 47, 49, 785 P.2d 1235, 1237 (App. 1989). In his opening brief, Aleman only challenges the trial court's reliance on § 28-673(C) as a basis for denying

---

[1]Evidence at trial established that, based on subsequent testing of the two gray-topped vials of Aleman's blood, criminalists at the Arizona Department of Public Safety determined that his blood-alcohol concentration was .221 and that his blood sample contained benzoylecgonine, a major metabolite of cocaine.

4

the motion to suppress.[2]  Relying on several out-of-state cases,[3] he argues that the statute is unconstitutional because it does not require "probable cause to believe that a *crime* has been committed before conducting a [warrantless] search which involves the taking of blood from a person."  The state does not respond to Aleman's constitutional argument at all, but rather urges us to uphold the trial court's ruling under § 28-1388(E), which the court cited as an alternative basis for denial of the motion to suppress.

¶9        In his reply brief, however, Aleman argues that § 28-1388(E) "does not apply in this case because no officer claimed to have had probable cause to arrest [Aleman] at the time Officer Encisco was requested to retrieve the blood from the hospital."  Generally, an appellant may not raise issues for the first time in the reply brief.  *See State v. Watson*, 198 Ariz. 48, ¶ 4, 6 P.3d 752, 755 (App. 2000); *State v. Cohen*, 191 Ariz. 471, ¶ 13, 957 P.2d 1014, 1017 (App. 1998).  And, if the appellant does so, "[a]n appellate court can 'disregard [the new] substantive issues raised.'"  *Id.*, *quoting State v. Cannon*, 148 Ariz. 72, 79, 713 P.2d 273, 280 (1985).

---

[2]In pertinent part, A.R.S. § 28-673(C) states:

> After a determination is made that a person was involved in a traffic accident resulting in death or serious physical injury as defined in § 13-105 and the officer has probable cause to believe that the person caused the accident . . . , the person may be requested to submit to and successfully complete any test or tests prescribed by subsection (A) of this section . . . .

[3]*See Blank v. State*, 3 P.3d 359 (Alaska Ct. App. 2000), *rev'd*, 90 P.3d 156 (Alaska 2004); *Cooper v. State*, 587 S.E.2d 605 (Ga. 2003); *King v. Ryan*, 607 N.E.2d 154 (Ill. 1992); *McDuff v. State*, 763 So. 2d 850 (Miss. 2000); *Commonwealth v. Kohl*, 615 A.2d 308 (Pa. 1992); *cf. State v. Roche*, 681 A.2d 472 (Me. 1996).

¶10　　　　Although Aleman did not challenge or otherwise address § 28-1388(E) in his opening brief, in our discretion we address the issue of whether the trial court's ruling is supportable under that statute. *See State v. Myers*, 117 Ariz. 79, 87, 570 P.2d 1252, 1260 (1977); Ariz. R. Crim. P. 31.13(c)(3), 17 A.R.S. (reply brief may respond "to questions of law or fact raised by the appellee's brief"); *cf. State v. Shipman & Sweeney*, 208 Ariz. 474, n.2, 94 P.3d 1169, 1171 n.2 (App. 2004) (appellate court may consider merits of dispositive issue even if not raised in opening brief). And, we address that issue first because courts should decide cases on nonconstitutional grounds if possible and should determine a statute's constitutionality only if absolutely necessary. *See Aitken v. Indus. Comm'n*, 183 Ariz. 387, 389, 904 P.2d 456, 458 (1995); *State v. Yslas*, 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984).

¶11　　　　Under Arizona law, absent express consent, police may obtain a DUI suspect's blood sample only pursuant to a valid search warrant, Arizona's implied consent law, A.R.S. § 28-1321, or the medical blood draw exception in § 28-1388(E). *See State v. Cocio*, 147 Ariz. 277, 283-84, 709 P.2d 1336, 1344-45 (1985); *see also State v. Estrada*, 209 Ariz. 287, ¶ 11, 100 P.3d 452, 455 (App. 2004). The state did not obtain a search warrant here and now relies solely on § 28-1388(E), which provides:

> Notwithstanding any other law, if a law enforcement officer has probable cause to believe that a person has violated [A.R.S.] § 28-1381 and a sample of blood, urine or other bodily substance is taken from that person for any reason, a portion of that sample sufficient for analysis shall be provided to a law enforcement officer if requested for law enforcement purposes.[4]

---

[4]A.R.S. § 28-1381 is the statute that prohibits and criminalizes driving under the influence of intoxicating substances.

¶12 In *Cocio*, our supreme court addressed the constitutionality and application of the predecessor statute, former A.R.S. § 28-692(M). The court held that, under the statute, removal of blood without a warrant from a person suspected of DUI is constitutionally permissible if there is "probable cause . . . to believe the person has [been driving under the influence of an intoxicant], . . . exigent circumstances are present and, . . . the blood is drawn for medical purposes by medical personnel." 147 Ariz. at 286, 709 P.2d at 1345; *see also Clary*, 196 Ariz. 610, ¶¶ 10-11, 2 P.3d at 1257; *Lind v. Superior Court*, 191 Ariz. 233, ¶ 17, 954 P.2d 1058, 1062 (App. 1998) (holding that hospital blood sample falls within permissible scope of medical-purpose statute when blood is drawn before showing of probable cause or arrest, amount of blood drawn is more than that needed for medical purposes at the time, and extra blood is set aside for possible law-enforcement use). The court in *Cocio* also ruled that the statutory language "'taken from that person for any reason'" means that "the blood must be drawn by medical personnel for any medical reason so as not to conflict with the orderly administration of care to those injured." 147 Ariz. at 286, 709 P.2d at 1345, *quoting* former § 28-692(M).

¶13 The record reflects, and Aleman does not dispute, that his blood samples were drawn by medical personnel (a hospital phlebotomist) for medical purposes. *See Cocio*, 147 Ariz. at 286, 709 P.2d at 1345; *Lind*, 191 Ariz. 233, ¶ 17, 954 P.2d at 1062 (holding that "the hospital draws the entire sample 'for medical purposes' within the meaning of the statute, and the officer's subsequent statutory request for a portion of the sample does not violate any rights of a defendant"); *Howard*, 163 Ariz. at 50, 785 P.2d at 1238 ("officer's indication that he wanted a blood sample prior to the [hospital] technician's drawing the blood does not alter

the fact of its being taken for medical purposes"); *cf. Estrada*. The record also reflects that the hospital furnished the two gray-topped blood vials to Officer Encisco pursuant to his request for a sample for law enforcement purposes, as § 28-1388(E) obligated the hospital to do. *See Lind*, 191 Ariz. 233, ¶ 19, 954 P.2d at 1062. Aleman does not contend otherwise.

¶14 In conjunction with his challenge to § 28-673(C), however, Aleman argues "exigent circumstances clearly did not exist because police had waited well over two hours before requesting blood from the hospital," during which time they could have obtained a search warrant. Even had Aleman presented this argument in connection with § 28-1388(E), the pertinent Arizona cases clearly refute it. *See Cocio*, 147 Ariz. at 286, 709 P.2d at 1345 (noting that "[t]he highly evanescent nature of alcohol in the defendant's blood stream guaranteed that the alcohol would dissipate over a relatively short period of time" and finding, "because of the destructability of the evidence, exigent circumstances existed"); *Lind*, 191 Ariz. 233, ¶ 20, 954 P.2d at 1062 (based on *Cocio*, declining to address whether "a blood sample presents an exigent circumstance" even when police requested portion of blood sample previously drawn by hospital for medical purposes); *Howard*, 163 Ariz. at 50, 785 P.2d at 1238.

¶15 The only significant issue, therefore, is whether the officers had probable cause to believe that Aleman had violated the DUI statute at the time they requested and obtained the blood samples from the hospital. "Probable cause is something less than the proof needed to convict and something more than suspicions." *Howard*, 163 Ariz. at 50, 785 P.2d at 1238; *cf. Smith v. Ariz. Dep't of Transp.*, 146 Ariz. 430, 432, 706 P.2d 756, 758 (App. 1985) (probable cause does not require law enforcement "to show that the operator was in

8

fact under the influence"; "[o]nly the probability and not a prima facie showing of intoxication is the standard for probable cause"). In addition, probable cause exists if the collective knowledge of the officers establishes that they had "reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable [person] to believe an offense . . . has been committed and that the person to be arrested . . . did commit it." *State v. Richards*, 110 Ariz. 290, 291, 518 P.2d 113, 114 (1974); *see also State v. Keener*, 206 Ariz. 29, ¶ 14, 75 P.3d 119, 122 (App. 2003) ("[O]ur courts have long recognized that collective knowledge of law enforcement officers may be considered to establish probable cause."). We apply the law to the facts de novo in determining whether probable cause existed. *See Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996); *State ex rel. McDougall v. Superior Court*, 191 Ariz. 182, 186, 953 P.2d 926, 930 (App. 1997).

¶16 In addition to observing open beer containers in and around Aleman's car, emergency personnel who attended to him at the scene told police they had detected the odor of intoxicants on his breath. Moreover, the "distinct strong odor" of alcohol emanating from Aleman's position in the driver's seat became even stronger when he attempted to speak to the deceased front-seat passenger. The accident occurred in broad daylight when Aleman crossed the centerline and collided head-on with the oncoming van. The record reflects no circumstances other than Aleman's impairment to explain the collision.

¶17 Officer Encisco's testimony that he personally had not had "any evidence that Mr. Aleman had committed a crime" at the time Encisco retrieved the blood samples from the hospital is of no moment. *Cf. McDougall*, 191 Ariz. at 186, 953 P.2d at 930 (officer

9

might have "probable cause to arrest even though he thought he did not"). As noted above, the collective knowledge of all of the officers may establish probable cause and in fact did so here.

¶18        In sum, the trial court did not clearly and manifestly err in implicitly finding the officers had had probable cause to believe Aleman had been driving while under the influence of an intoxicant, as required by § 28-1388(E), and consequently denying Aleman's motion to suppress based on that statute.[5] *See, e.g.*, *State v. Kemp*, 168 Ariz. 334, 813 P.2d 315 (1991) (trial court properly admitted defendant's blood test results after he had driven his car into path of oncoming vehicle, caused death of other driver, smelled of alcohol at the scene and during questioning at hospital, even though defendant was not under arrest at that time); *State v. Zavala*, 136 Ariz. 356, 666 P.2d 456 (1983) (officer had probable cause to make DUI arrest after officer found defendant unconscious in vehicle parked off roadway and noted strong odor of alcoholic beverage on him and in vehicle); *Howard*, 163 Ariz. at 49-50, 785 P.2d at 1237-38 (sufficient evidence supported probable cause finding when defendant's car rear-ended other vehicle, and paramedic at scene "detected an odor of alcohol that could have been produced by [defendant's] consumption of alcohol or something else

---

[5]Aleman's reliance on *State v. Flannigan*, 194 Ariz. 150, 978 P.2d 127 (App. 1998), is unavailing. There, unlike in this case, the defendant "did not sustain any injuries in the accident that required medical personnel to draw his blood" and, therefore, that case "[did] not involve the medical purposes exception of [former] A.R.S. section 28-692(J) [now § 28-1388(E)], which would have entitled the police to receive a sample of his blood regardless of his consent." *Id.* ¶ 14. *See also State v. Brita*, 154 Ariz. 517, 521, 744 P.2d 429, 433 (App. 1987), *approved in part and vacated in part*, 158 Ariz. 121, 761 P.2d 1025 (1988) ("defendant's blood was not part of a sample taken for medical reasons in accordance with [former] A.R.S. § 28-692(M)).

associated with [his] injuries," despite defendant's contention that "none of the officers determined independently that there was alcohol on [his] breath").

## II. *Blakely* issues

¶19      After this appeal came at issue, the United States Supreme Court decided *Blakely*. Thereafter, pursuant to Aleman's motion and this court's order, the parties filed supplemental briefs addressing whether and how *Blakely* affects this case. We now address those issues.

¶20      As noted earlier, the trial court imposed slightly aggravated, eight-year sentences on the four aggravated assault convictions. Those convictions related to the four occupants, two of whom were minors, of the oncoming minivan with which Aleman's vehicle collided. In imposing those sentences, the trial court found the following aggravating circumstances: that Aleman previously had been convicted of at least one DUI and had another DUI charge pending; that two of the victims were minors; that multiple victims were involved; that Aleman's driver's license had been suspended or revoked at the time of the accident; and that Aleman had recognized that he was too drunk to drive. In mitigation, the trial court found that Aleman had minor children to support, that he had no known prior felony convictions, and that he appeared to be remorseful. After considering those aggravating and mitigating circumstances, the trial court determined that a slightly aggravated sentence was appropriate on each of the four aggravated assault convictions.

¶21      In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435, 455 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

11

maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely*, the Court extended that ruling and held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." ___ U.S. at ___, 124 S. Ct. at 2537. The Court explained:

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Id.* (citation omitted), *quoting* 1 J. Bishop, *Criminal Procedure* § 87 at 55 (2d ed. 1872); *see also United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005).

¶22        As Aleman correctly points out, new appellate opinions announcing a change in the law generally apply to any cases that are pending at the time the opinion is filed. *See Schriro v. Summerlin*, ___ U.S. ___, ___, 124 S. Ct. 2519, 2522, 159 L. Ed. 2d 442 (2004); *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649, 661 (1987). Thus, *Blakely* applies to this case. *See State v. Henderson*, 209 Ariz. 300, ¶ 9, 100 P.3d 911, 914 (App. 2004); *State v. Miranda-Cabrera*, 209 Ariz. 220, ¶ 26, 99 P.3d 35, 41 (App. 2004). The state does not argue otherwise.[6]

_____

[6]Nor does the state contend *Blakely* does not apply to Arizona's treatment of aggravating sentencing factors under A.R.S. § 13-702 in noncapital cases. Indeed, it is now clear that *Blakely*'s analysis and conclusion apply with equal force to Arizona's sentencing structure under § 13-702(B) and (C). *See State v. Brown*, 209 Ariz. 200, ¶ 12, 99 P.3d 15, 18 (2004); *Henderson*, 209 Ariz. 300, ¶ 6, 100 P.3d at 913-14 (in Arizona, the presumptive

**¶23**        Relying on *Apprendi* and *Blakely*, Aleman contends the trial court exceeded its authority by imposing aggravated sentences based on facts not found by the jury or admitted by him. Those aggravated sentences, Aleman argues, exceeded the "statutory maximum" as defined in *Blakely* and violated his Sixth Amendment right to a trial by jury on the aggravating circumstances. Aleman further argues that, because no aggravating factors were charged in the indictment and because the trial court supposedly has no legal authority to empanel a new jury to determine any such factors,[7] he "is entitled to be resentenced to no more than the presumptive term of imprisonment" on the aggravated assault convictions.

---

term provided in A.R.S. § 13-701 is the "'statutory maximum'" for purposes of *Blakely*), *quoting Blakely*, ___ U.S. at ___, 124 S. Ct. at 2537; *State v. Resendis-Felix*, 209 Ariz. 292, n.1, 100 P.3d 457, 459 n.1 (App. 2004).

[7]We reject this argument and note that our supreme court has concluded that even in capital cases, the indictment need not specify aggravating factors in support of the death penalty. *McKaney v. Foreman*, 209 Ariz. 268, ¶ 23, 100 P.3d 18, 23 (2004); *see also State ex rel. Smith v. Conn*, 209 Ariz. 195, ¶ 10, 98 P.3d 881, 884 (App. 2004), *quoting State v. Nichols*, 201 Ariz. 234, ¶ 15, 33 P.3d 1172, 1176 (App. 2001) ("aggravators that are now the functional equivalent of elements 'need not be alleged in the charging document provided that the notice . . . given the defendant comports with Arizona's traditional notice requirements for alleging sentence enhancements'"). In addition, the court in *Conn* concluded that, even though "A.R.S. § 13-702(B) requires a trial judge to find aggravating factors," that "does not mean that, post-*Blakely*, juries cannot do so without a legislative change to the statute." *Id.* ¶ 6; *see also Aragon v. Wilkinson*, 209 Ariz. 61, ¶ 15, 97 P.3d 886, 891 (App. 2004) ("the court may utilize its inherent authority to convene a jury trial on the existence of facts that may support imposition of an aggravated sentence").

¶24　　　　Preliminarily, relying on both Arizona[8] and federal cases,[9] the state contends Aleman waived any Sixth Amendment challenge to his aggravated sentences under *Blakely* because the foundation for his claim existed well before *Blakely* was decided, but he failed to present the argument at sentencing or in his opening brief. The authorities the state cites clearly support its waiver argument. But waiver is a procedural concept that courts do not rigidly employ in mechanical fashion. *See State v. Smith*, 203 Ariz. 75, ¶ 12, 50 P.3d 825, 829 (2002) (reviewing court may choose to address argument otherwise waived). And this court has stated that *Blakely* error, "unless harmless, constitutes fundamental error" which is not waived despite a party's failure to timely raise it. *State v. Resendis-Felix*, 209 Ariz. 292, ¶ 6, 100 P.3d 457, 459 (App. 2004); *see also State v. Munninger*, 209 Ariz. 473, ¶¶ 7-12, 104 P.3d 204, 208-09 (App. 2005) (no waiver of *Blakely* issue despite not having been raised below); *Henderson*, 209 Ariz. 300, ¶ 9, 100 P.3d at 914 (addressing alleged *Blakely* error even though "[n]either party requested that a jury determine the aggravators beyond a

---

[8]*See State v. Sepahi*, 206 Ariz. 321, n.3, 78 P.3d 732, 735 n.3 (2003) (*Apprendi* "issue was not raised either in the superior court or the court of appeals, and therefore was not preserved for our review"); *State v. Holder*, 155 Ariz. 83, 86, 745 P.2d 141, 144 (1987) (Even though *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), had not yet been decided at time of defendant's trial and constituted "a significant change in the law," it was not "so novel an idea as to excuse the defendant's failure to make a timely objection."); *State v. Tison*, 129 Ariz. 526, 535-36, 633 P.2d 335, 344-45 (1981) (defendant's Fifth and Sixth Amendment claims not raised "in the trial court are waived on appeal").

[9]*See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002); *United States v. Palmer*, 297 F.3d 760, 767 (8th Cir. 2002); *Rodriguez v. United States*, 286 F.3d 972, 978 (7th Cir. 2002); *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *United States v. Padilla-Reyes*, 247 F.3d 1158, 1164 (11th Cir. 2001); *United States v. Levy*, 379 F.3d 1241, 1242 (11th Cir. 2004); *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1063 (8th Cir. 2002); *see also State v. Leja*, 684 N.W.2d 442, 447 n.2 (Minn. 2004).

reasonable doubt"); *cf. Miranda-Cabrera*, 209 Ariz. 220, ¶ 26, 99 P.3d at 41 (addressing *Blakely* issue on the merits even though defendant "fail[ed] to raise it at the sentencing hearing or in his opening brief"). Accordingly, in our discretion we address the supplemental *Blakely* issues the parties have raised. *See Resendis-Felix*, 209 Ariz. 292, ¶ 6, 100 P.3d at 459.

¶25    Aside from its waiver argument, the state also contends Aleman's slightly aggravated sentences did not violate the Sixth Amendment because he "admitted at sentencing the fact that he had a prior DUI conviction—a conviction that fell within the exception announced in *Apprendi*." As noted above, the Supreme Court in *Apprendi* excepted prior convictions from the general principle that facts that increase the penalty for a crime must be presented to a jury and proved beyond a reasonable doubt. 530 U.S. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455; *see State v. Ring*, 204 Ariz. 534, ¶¶ 64-66, 65 P.3d 915, 939 (2003) (*Ring III*). And, as the state correctly points out, "*Blakely* did not alter *Apprendi*'s exception of the fact of a prior conviction from the dictates of the Sixth Amendment trial-by-jury requirement." *See Blakely*, ___ U.S. at ___, 124 S. Ct. at 2536 (applying, but not altering, "the rule we expressed in *Apprendi*," which expressly excluded "'the fact of a prior conviction'"), *quoting Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455; *State v. Cons*, 208 Ariz. 409, ¶ 15, n.3, 94 P.3d 609, 614-15, 613 n.3 (App. 2004).[10]

---

[10]*See also United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004); *United States v. Marseille*, 377 F.3d 1249, 1258 n.14 (11th Cir. 2004) (although district court had enhanced defendant's sentence with prior convictions, "*Blakely* does not take such fact-finding out of the hands of the courts"); *United States v. Cooper*, 375 F.3d 1041, 1053 n.3 (10th Cir. 2004); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2000)

**¶26** Moreover, *Apprendi*'s exception of the "fact" of a prior conviction is not limited solely to a prior *felony* conviction. Rather, the exception encompasses any conviction entered in a Sixth Amendment-compliant manner. *See Goldsberry v. State*, 821 N.E.2d 447, 461 (Ind. Ct. App. 2005) (under *Blakely*, trial court may rely on prior misdemeanor convictions as an aggravator without a finding by jury); *State v. Kendall*, 58 P.3d 660, 667 (Kan. 2002) (prior misdemeanor DUI convictions used to enhance instant DUI conviction); *State v. Van Buren*, 98 P.3d 1235, 1240 (Wash. Ct. App. 2004) (*Blakely* does not preclude trial court from considering as aggravator defendant's criminal history, including misdemeanor convictions); *see also United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002) (juvenile adjudications can properly be characterized as prior convictions for *Apprendi* purposes). Aleman does not argue otherwise, nor does he dispute that at the time of his prior conviction, a person charged with misdemeanor DUI in Arizona had the right to a jury trial, and the burden of proof was beyond a reasonable doubt. *See Rothweiler v. Superior Court*, 100 Ariz. 37, 47, 410 P.2d 479, 486 (1966); A.R.S. § 28-1381(F) (at arraignment, court shall inform DUI defendant that he or she "may request a trial by jury and that the request, if

("*Apprendi* held that *all* prior convictions—not just those admitted on the record—were exempt from *Apprendi*'s general rule and . . . may continue to be treated as sentencing factors."); *Carson v. State*, 813 N.E.2d 1187, 1189 (Ind. Ct. App. 2004) ("[T]he multiple convictions that the extensive criminal history comprises have already been proven beyond a reasonable doubt and are thus exempt from the *Apprendi* rule as clarified by *Blakely*."); *State v. Abdullah*, 858 A.2d 19, 38 (N.J. Super. Ct. App. Div. 2004) (trial court's finding of three aggravating factors "used to justify the maximum second-degree ten-year term did not offend *Blakely*, as they were derived from defendant's prior criminal record and, therefore, expressly excepted").

made, shall be granted"); *but cf. Derendal v. Griffith*, 209 Ariz. 416, 104 P.3d 147 (2005) (overruling *Rothweiler* and holding that drag racing is not a jury-eligible offense).

¶27     As noted earlier, Aleman admitted at sentencing the fact that he had a prior DUI conviction.[11]  The state argues, "[b]ased on the fact of the *Apprendi*-exempt prior conviction, [Aleman] became constitutionally eligible to receive a prison term of up to 15 years." *See* § 13-604(I).[12]  According to the state, "under the Sixth Amendment and the *Apprendi/Blakely* rule, the fact of Aleman's prior conviction, standing alone, was sufficient to support the imposition of a sentence greater than the presumptive."

¶28     Some decisions by Division One of this court support the state's "one-is-enough" argument. *See State v. Estrada*, 446 Ariz. Adv. Rep. 30, ¶ 1 (Ct. App. March 4, 2005) ("defendant whose prior convictions constitute an aggravating circumstance" is not constitutionally entitled "to jury findings on the existence of any additional aggravating factors"); *State v. Martinez*, 209 Ariz. 280, ¶ 1, 100 P.3d 30, 31-32 (App. 2004) (holding that "a judge's imposition of an aggravated sentence that falls within the range authorized by a jury's verdict comports with *Blakely*; a jury need not find *every* aggravator upon which a sentencing judge relies"); *State ex rel. Smith v. Conn*, 209 Ariz. 195, ¶ 12, 98 P.3d 881, 884

---

[11]In its discretion, the trial court could consider that prior misdemeanor conviction under the "catch-all" provision in A.R.S. § 13-702(C)(21), even though it did not qualify as an aggravating circumstance under § 13-702(C)(11).

[12]Aleman was subject to the enhanced penalties of A.R.S. § 13-604 because the jury expressly found that each class three, aggravated assault offense constituted a dangerous-nature felony.  Under § 13-604(I), the presumptive term was 7.5 years' imprisonment, and the maximum term was fifteen years.  The trial court imposed slightly aggravated eight-year terms, to be served concurrently, even though the court could have imposed consecutive sentences on each of the aggravated assault convictions. *See, e.g.*, *State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984); *State v. White*, 160 Ariz. 377, 773 P.2d 482 (App. 1989).

17

(App. 2004) (if jury finds "any alleged aggravating factor" was proven, trial court may consider "[o]ther factors in aggravation or mitigation" and impose a sentence anywhere "within the statutory range for aggravated sentences"); *cf. Miranda-Cabrera*, 209 Ariz. 220, ¶ 34, 99 P.3d at 43 ("[W]hether the sentencing scheme is determinate or indeterminate, once the jury has found the facts necessary to impose a sentence within a statutory range, a judge may consider any additional sentencing factors in imposing a lesser sentence than the statute authorizes.").

**¶29**     This court, however, has rejected the state's broad argument that, even when a trial court finds both aggravating and mitigating factors, a single *Blakely*-compliant or -exempt aggravating factor authorizes the court to "find additional aggravating factors under the relaxed, pre-*Blakely* rules found in § 13-702." *State v. Timmons*, 209 Ariz. 403, ¶ 11, 103 P.3d 315, 319 (App. 2005); *but see State v. Chiappetta*, ___ Ariz. ___, 107 P.3d 366 (App. 2005) (Espinosa, J.).  Accordingly, this court declined to follow the contrary view espoused in *Martinez* and *Conn*. *Timmons*, 209 Ariz. 403, ¶¶ 6-7, 103 P.3d at 318.  Similarly, other panels of Division One also have rejected *Martinez*'s "one-is-enough approach," refusing to "automatically uphold sentences based on the presence of a single aggravating factor when the sentencing judge relied on others not properly found by a jury." *Munninger*, 209 Ariz. 473, ¶¶ 27, 30, 104 P.3d at 213, 214; *see also State v. Pitre*, 446 Ariz. Adv. Rep. 10, ¶ 13 (Ct. App. March 4, 2005) (rejecting state's contention that "a sole valid factor under *Blakely* opens the door and allows a court without a jury to consider any other factors that do not fit within *Blakely*'s confines").  Thus, when a trial court finds mitigating factors and multiple aggravating factors, only some of which are *Blakely*-compliant or -exempt, "Arizona law

18

does not authorize an aggravated sentence upon the mere finding of one aggravating circumstance but, rather, authorizes an aggravated sentence only if all of the aggravating circumstances taken together outweigh the mitigating factors found by the court." *State v. Alire*, 209 Ariz. 517, ¶ 12, 105 P.3d 163, 165-66 (App. 2005).[13]

**¶30** Again, Aleman's prior DUI conviction was *Blakely*-exempt and, therefore, properly considered in aggravation. Likewise, the trial court properly considered two other factors that were *Blakely*-compliant because they were "inherent in the jury's verdicts." *State v. Oaks*, 209 Ariz. 432, ¶ 23, 104 P.3d 163, 168 (App. 2004). The trial court cited the involvement of multiple victims as an aggravating factor. By finding Aleman guilty on the four charges of aggravated assault, the jury implicitly found there had been multiple victims. And, in its guilty verdicts on the DUI charges, the jury specifically found that at the time of the offenses, Aleman's license was "suspended, canceled, refused or revoked."[14] Our inquiry

---

[13]In *Alire*, this court held that when a trial court finds at least one *Blakely*-compliant or -exempt aggravating factor and finds no mitigating factors, the court, without violating *Blakely*, may consider additional aggravating factors for which reasonable evidence exists and may impose a sentence anywhere within the aggravated range based on the totality of aggravating factors. *Alire*, 209 Ariz. 517, ¶ 13, 105 P.3d at 166; *see also State v. Viramontes*, 204 Ariz. 360, ¶ 14, 64 P.3d 188, 190 (2003) ("In non-capital cases, aggravators need only be supported by reasonable evidence."). *Contra*, *State v. Pitre*, 446 Ariz. Adv. Rep. 10, ¶¶ 22-23 (Ct. App. March 4, 2005) (disagreeing with *Alire* and imposing *Blakely*'s requirements on all aggravating factors, regardless of absence of any mitigating factors). Here, however, the trial court expressly found three mitigating factors and weighed them against the aggravating factors. Therefore, *Alire*'s holding does not apply.

[14]At trial, Aleman stipulated that he had known his driver's license was suspended at the time of the accident, and the trial court instructed the jury that it could consider the stipulated fact as evidence. Apparently referring to that stipulation, Aleman incorrectly maintains that the trial court aggravated his sentence in part based on his admission that "he knew his license was suspended." In fact, however, the trial court merely cited as an aggravating factor that his "privilege to drive was suspended . . . at the time [he was] driving." And, the jury expressly found that fact in its verdicts on the DUI charges, contrary

does not end there, however, because the trial court found other aggravating factors and weighed them against the mitigating factors it also found. *See Munninger*, 209 Ariz. 473, ¶ 25, 104 P.3d at 213; *Timmons*, 209 Ariz. 403, ¶ 11, 103 P.3d at 318-19. Nonetheless, we conclude the trial court's consideration of the other aggravating factors either did not violate *Blakely* or was harmless.

**¶31** No Sixth Amendment violation occurs if a trial court aggravates a sentence based on a fact "*admitted by the defendant.*" *Blakely*, ___ U.S. at ___, 124 S. Ct. at 2537; *see also Ring III*, 204 Ariz. 534, ¶ 93, 65 P.3d at 944 ("In cases in which a defendant stipulates, confesses or admits to facts sufficient to establish an aggravating circumstance, we will regard that factor as established."). Based on undisputed evidence at trial, Aleman conceded at sentencing that "he knew he was impaired and shouldn't have been driving" at the time of the accident. Thus, the trial court's reliance on that acknowledged, uncontested fact arguably did not violate *Blakely*.[15]

---

to Aleman's argument that "none of the aggravating factors . . . were found proven beyond a reasonable doubt by the jury."

[15]In her partial dissent, Judge Flórez opines that, in order to be *Blakely*-compliant or -exempt, a defendant's "admission" to a fact used for sentence-aggravation purposes must meet all the constitutional waiver requirements of a knowing, intelligent, and voluntary guilty plea. But our supreme court has implied that *Blakely* itself is not clear on that point. *See Brown*, 209 Ariz. 200, n.4, 99 P.3d at 18 n.4; *see also United States v. Thomas*, 389 F.3d 424, 426 (3d Cir. 2004) (outlining several possible interpretations of the language in *Blakely* relating to "admissions" by a defendant). *Blakely* excepted from its scope sentences imposed based on "*facts . . . admitted by the defendant*" or to which the defendant "stipulates" without expounding on that exception or expressly limiting its context. *Blakely*, ___ U.S. at ___, 124 S. Ct. at 2537, 2541. *See Wickliff v. State*, 816 N.E.2d 1165, 1167 (Ind. Ct. App. 2004) (defendant's statements at sentencing were facts admitted by him and "are exempt from the *Apprendi/Blakely* rule"). In any event, we need not resolve the issue of what does or does not qualify as a valid "admission" for *Blakely* purposes because here any reasonable jury would find beyond a reasonable doubt those facts to which Aleman stipulated or admitted.

**¶32** Moreover, any alleged *Blakely* error relating to that factor or the other aggravating factors was harmless. Arizona courts and all federal circuit courts have concluded that *Apprendi* or *Blakely* error is subject to harmless error analysis. *See State v. Sepahi*, 206 Ariz. 321, n.3, 78 P.3d 732, 735 n.3 (2003) ("any *Apprendi* error would be harmless"); *Henderson*, 209 Ariz. 300, ¶¶ 22, 33, 100 P.3d at 917, 921-22 (noting that "every federal circuit court has . . . been uniform in holding that *Apprendi* error can be reviewed for harmless error" and that "other courts, since *Blakely*, have also applied a harmless error analysis to *Blakely* violations"); *Resendis-Felix*, 209 Ariz. 292, ¶¶ 8-10, 100 P.3d at 460; *Martinez*, 209 Ariz. 280, ¶ 1, 100 P.3d at 31-32 (holding that "*Blakely* error is subject to harmless error or fundamental error analysis and may or may not require reversal based on the facts of a particular case"); *Miranda-Cabrera*, 209 Ariz. 220, ¶ 30, 99 P.3d at 42 (even assuming defendant's trial testimony did not qualify as admissions for sentencing purposes, trial court's enhancement of sentencing range without "separate and specific [jury] finding" that defendant had directed his conduct at a child was harmless error).

**¶33** The evidence indisputably showed that two of the victims were minors, and their young ages were specifically referred to at sentencing without contradiction. Thus, "no reasonable jury could have concluded differently than the trial judge concluded." *Henderson*, 209 Ariz. 300, ¶ 41, 100 P.3d at 923. And both the prosecutor and the trial court

---

Therefore, any alleged *Blakely* error is harmless. *See State v. Ring*, 204 Ariz. 534, ¶ 86, 65 P.3d 915, 942 (2003) (*Ring III*) ("Other circumstances that may involve harmless error include, for example, those instances in which the defendant stipulated to [the fact at issue] or in which overwhelming evidence establishes [that fact]."); *see also State v. Munninger*, 209 Ariz. 473, ¶ 13, 104 P.3d 204, 210 (App. 2005) ("No reversible error occurs when . . . the defendant stipulated to the facts constituting the aggravating circumstance.").

21

noted at sentencing, without objection or dispute, that at the time of the offenses Aleman had not only a prior DUI conviction, but also a pending DUI charge on which he later was convicted. Finally, none of the aggravating factors involved "an inherently subjective determination." *Timmons*, 209 Ariz. 403, ¶ 14, 103 P.3d at 319; *see also Oaks*, 209 Ariz. 432, ¶ 23, 104 P.3d at 168.

¶34 In short, "we have no difficulty in concluding that on the record in this case no reasonable jury could have concluded differently than the trial judge concluded" on these other aggravating circumstances the trial court cited. *Henderson*, 209 Ariz. 300, ¶ 41, 100 P.3d at 923. And, although the trial court also found some mitigating factors and weighed them against the aggravating factors, based on the particular factors found and the slightly aggravated sentence the court imposed (a mere six months above the presumptive term), we conclude beyond a reasonable doubt that any alleged *Blakely* error "did not contribute to or affect the sentencing outcome here." *Resendis-Felix*, 209 Ariz. 292, ¶ 11, 100 P.3d at 460. Thus, any alleged *Blakely* error was harmless beyond a reasonable doubt.

**DISPOSITION**

¶35 Aleman's convictions and sentences are affirmed.

_____
JOHN PELANDER, Chief Judge

E S P I N O S A, Judge, specially concurring.

¶36 I fully concur in the analysis of the motion-to-suppress issue and the ultimate disposition affirming Aleman's convictions and sentences. With respect to the *Blakely* issues, however, I would find no error, and therefore no need to engage in any harmless error

review.  Under *Blakely*, Aleman's prior conviction, by itself, authorized the aggravated range and permitted the trial court to impose a sentence anywhere up to the prescribed statutory maximum.  *State v. Estrada*, 446 Ariz. Adv. Rep. 30 (Ct. App. March 4, 2005); *State v. Chiappetta*, ___ Ariz. ___, 107 P.3d 366 (App. 2005) (Espinosa, J.); *see State v. Martinez*, 209 Ariz. 280, 100 P.3d 30 (App. 2004) (one *Blakely*-compliant aggravator permits sentencing within expanded statutory range).

¶37        It also bears mention that the dissent's view that any *Blakely* error, by its very nature, is structural and, therefore, not subject to harmless error review has been rejected by both divisions of this court.  *See State v. Henderson*, 209 Ariz. 300, 100 P.3d 911 (App. 2004); *State v. Resendis-Felix*, 209 Ariz. 292, 100 P.3d 457 (App. 2004).  Furthermore, the notion that a sentencing factor admitted by a defendant is subject to independent review pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), needlessly elevates form over substance, particularly on the facts here.  There is no question or doubt about the status of Aleman's suspended license, which the jury expressly found in its verdicts on the DUI charges, or his prior DUI conviction.  Indeed, Aleman knowingly and with the assistance of counsel stipulated to the former and acknowledged the latter to the court at sentencing and does not contest those facts or raise the theory adopted by the dissent.

¶38        Our supreme court has said:  "In cases in which a defendant stipulates, confesses or admits to facts sufficient to establish an aggravating circumstance, we will regard that factor as established."  *State v. Ring*, 204 Ariz. 534, 563, 65 P.3d 915, 944 (2003); *see also State v. Finch*, 205 Ariz. 170, 68 P.3d 123 (2003) (defendant's admission that he had shot victim to prevent his reporting the robbery fully established pecuniary gain motive);

23

*State v. Miranda-Cabrera*, 209 Ariz. 220, ¶ 30, 99 P.3d 35, 42 (App. 2004) (defendant's trial testimony constituted "facts 'admitted by the defendant'" for purposes of sentence aggravation comporting with *Blakely*); *Wickliff v. State*, 816 N.E.2d 1165, 1167 (Ind. Ct. App. 2004) (defendant's statements at sentencing were facts admitted by him and were "exempt from the *Apprendi/Blakely* rule"); *cf. State v. Montaño*, 206 Ariz. 296, 77 P.3d 1246 (2003) (defendant's introduction of mitigation evidence relating to prisoner status was admission of in-custody status for sentence aggravation).

¶39 Moreover, it is difficult to comprehend how even a routine stipulation or admission by a defendant can provide an element of an offense or the factual basis for a finding of guilt and judgment of conviction, as occurred here and has occurred in countless other cases, yet would be deemed insufficient for sentencing purposes absent an independent *Boykin* advisory. It was no surprise to Aleman, nor has it ever surprised any criminal defendant assisted by competent counsel, that such admissions could or would affect their sentences. In short, the dissent's view has never been the law, and *Blakely* does not compel such an expansion of the Sixth Amendment.

¶40 Finally, even if harmless error analysis were appropriate or required, I agree that any alleged *Blakely* error here would be harmless beyond a reasonable doubt.


_____
PHILIP G. ESPINOSA, Judge

F L Ó R E Z, Presiding Judge, concurring in part and dissenting in part.

¶41 I concur with the decision to affirm Aleman's convictions. I also join Judge Pelander in rejecting the state's argument that, even when a trial court finds both aggravating

and mitigating factors, a single *Blakely*-compliant or -exempt aggravating factor authorizes the court to find additional aggravating factors by reasonable evidence. I dissent, however, because I believe the trial court erred by considering at least one aggravating factor that was neither exempt from nor compliant with *Blakely*. Because I agree with Judge Eckerstrom's special concurrence in *State v. Resendis-Felix*, 209 Ariz. 292, 100 P.3d 457 (App. 2004), that any *Blakely* error is structural and, therefore, not subject to harmless error analysis, I would remand the case for resentencing.

¶42 I would find *Blakely* error because, in determining Aleman was eligible for an aggravated sentence, the court weighed at least one non-*Blakely*-exempt fact that was neither found by the jury beyond a reasonable doubt nor admitted by Aleman under circumstances I believe are implicitly required under *Blakely* and *Apprendi*—namely, that Aleman admitted the alleged fact in a knowing, intelligent, and voluntary waiver of his right to have it decided by a jury beyond a reasonable doubt. *See Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (record in criminal trial must show that a guilty plea was knowingly, intelligently, and voluntarily made).

¶43 *Apprendi* made clear that, other than the fact of a prior conviction, a criminal defendant has the right to have a jury determine beyond a reasonable doubt "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." *Id*. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455. "Almost without exception, the requirement of a knowing and intelligent waiver has been applied . . . to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S. Ct. 2041, 2052-53, 36 L. Ed. 2d 854, 868 (1973); *see*

*also Boykin*, and *State v. Avila*, 127 Ariz. 21, 617 P.2d 1137 (1980) (extending knowing, voluntary and intelligent standard to all cases in which defendant waives right to a jury trial); *State v. Conroy*, 168 Ariz. 373 , 375, 814 P.2d 330, 332 (1991) ("[T]he knowing, voluntary, and intelligent waiver standard articulated in *Boykin* applies to all waivers of a jury trial, for that standard applies to the waiver of *any* constitutional right."). The rights *Blakely* and *Apprendi* protect fall within that protected category, and exist at the core of our criminal justice system. In *Blakely*, the Supreme Court expressed its "commitment" to insure that the right to a jury trial "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure." ___ U.S. at ___, 124 S. Ct. at 2538-39. I see no reason to carve out an exception to the general rule expressed in *Schneckloth*.

¶44 Therefore, although the majority correctly points out that Aleman, in the face of undisputed evidence presented at trial, conceded at sentencing that "he knew he was impaired and shouldn't have been driving" at the time of the accident, that statement cannot be considered an admission for the purpose of complying with *Blakely*. Had Aleman known the consequences of his statement—that the fact he "admitted" would be used against him to aggravate his sentence—and had he understood that he had a right to require the state to prove this fact beyond a reasonable doubt to a jury, he might well have not conceded it at sentencing.

_____
M. JAN FLÓREZ, Presiding Judge

26